[No. C010320. Third Dist. Aug. 24, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
BARRY DEWAYNE WOODS et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

 \*Pursuant to California Rules of Court, rule 976.1 this opinion is certified for publication
with the exception of the FACTS and parts V through XIV.

1572

1576

**COUNSEL**

Mark E. Cutler, Cynthia Thomas, Marcia C. Levine and Jeffrey J. Stuetz, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Ward A. Campbell and Lisbeth Bellet, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SCOTLAND, J.**—After their friend was shot by rival gang member Mayse Walker, defendants Barry Dewayne Woods and John Windham, along with several accomplices, set out to find Walker in an apparent effort to retaliate for the shooting. Wearing ski masks and armed with guns, they went to the apartment of Susan Allen and Trudy Johnson, two of Walker's acquaintances. After Woods beat up one of the women's neighbors, Woods and his cohorts forcibly entered the apartment. Windham waited outside as a lookout. At gunpoint, the intruders demanded to know Walker's whereabouts. They assaulted both women and shot Johnson, but Allen and Johnson were unable to tell them where they could find Walker. Then, after being warned that "someone said the police is coming," the intruders departed, taking with them two automobile tires Walker had stored at the apartment. Outside a nearby apartment complex, the assailants loaded the tires into their car. A few parking stalls away, Craig Chmelik and James McMahon were preparing to depart in Chmelik's Mustang. Noticing the pair, Woods drew a large handgun, loaded it, and fired six shots into the Mustang. McMahon was wounded, and Chmelik was killed. After the shooting, Woods and Windham went to a friend's house, where Woods hid the murder weapon and he and Windham apparently flushed bullet shells down the toilet.

Defendants were convicted of first degree murder of Chmelik (Pen. Code, § 187), attempted murder of McMahon (Pen. Code, §§ 187, 664), and assaults with firearms on Allen and Johnson (Pen. Code, § 245, subd. (a)(2)). Numerous enhancing allegations were charged and found true, including allegations that Woods used a firearm in the commission of the offenses (Pen. Code, § 12022.5, subd. (a)), Windham was armed with a gun (Pen. Code, § 12022, subd. (a)(1), and Woods had served a prior prison term (Pen. Code, § 667.5, subd. (b)).

In the published portion of this opinion, we conclude the trial court erred in instructing the jury that Windham could not be found guilty of second degree murder as an aider and abettor if the jury determined that Woods, the perpetrator of the killing, was guilty of first degree murder. As we shall explain, under Penal Code section 31 an aider and abettor is liable vicariously for any crime committed by the perpetrator which is a reasonably foreseeable consequence of the criminal act originally contemplated by the perpetrator and the aider and abettor. It follows that an aider and abettor may be found guilty of a lesser crime than that ultimately committed by the perpetrator where the evidence suggests the ultimate crime was not a reasonably foreseeable consequence of the criminal act originally aided and abetted, but a lesser crime committed by the perpetrator during the accomplishment of the ultimate crime was such a consequence. Accordingly, even

when necessarily included offense instructions are not required for the perpetrator because the evidence establishes that, if guilty at all, the perpetrator is guilty of the greater offense, the trial court has a duty to instruct sua sponte on necessarily included offenses for the aider and abettor if the evidence raises a question whether the greater offense is a reasonably foreseeable consequence of the criminal act originally contemplated and abetted, but would support a finding that a lesser included offense committed by the perpetrator was such a consequence. However, the trial court need not instruct on a particular necessarily included offense if the evidence is such that the aider and abettor, if guilty at all, is guilty of something beyond that lesser offense, i.e., if the evidence establishes that a greater offense was a reasonably foreseeable consequence of the criminal act originally contemplated, and no evidence suggests otherwise.

Applying these principles to the facts of this case, we conclude the evidence raised a question whether the first degree murder of Chmelik was a reasonably foreseeable consequence of the armed assaults on Allen and Johnson which Windham aided and abetted. However, we find the evidence established beyond question that the necessarily included offense of second degree murder (i.e., an intentional but unpremeditated killing or a killing resulting from conduct inherently dangerous to human life) was a reasonably foreseeable consequence. Thus, the trial court had a duty to inform the jurors they could convict Windham of second degree murder as an aider and abettor even though they found Woods was guilty of first degree murder, but the court was not required to instruct on included offenses less than second degree murder.

Due to the instructional error, Windham's murder conviction cannot stand. Because the evidence established that Windham's guilt as an aider and abettor was not less than second degree murder, we shall give the People the option of retrying him on the charge of first degree murder or accepting a reduction of the conviction to second degree murder.

In the unpublished portion of this opinion, we dispose of defendants' numerous other contentions.[1] Only one of them has merit. While the trial judge was called away on military duty, another judge presided over the bifurcated portion of the trial on the allegation Woods had served a prior prison term within the meaning of Penal Code section 667.5, subdivision (b). Because the replacement judge misinstructed the jury on the elements of said enhancement, the finding thereon must be reversed.

---

[1]Each defendant joins in his codefendant's contentions.

FACTS*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISCUSSION

I

The prosecution's theory was that Windham aided and abetted Woods to commit the criminal acts of assaulting Allen and Johnson with firearms in order to coerce the victims into telling defendants where Walker was located so defendants could find and harm him in retaliation for the gang-related shooting of their friend. The prosecutor argued that, because the evidence was sufficient to establish Woods committed first degree murder when he killed Chmelik following the assaults on Allen and Johnson, and because the jury could find the first degree murder was a reasonably foreseeable consequence of the assaults with firearms on Allen and Johnson committed in an effort to locate Walker, Windham was liable as an aider and abettor for the first degree murder of Chmelik.

The trial court instructed the jury on assault with a firearm, murder in the first and second degree, and aider and abettor liability. Among other things, the court informed the jury that one who by act or advice aids, promotes, encourages or instigates the commission of a crime with knowledge of the unlawful purpose of the perpetrator and with the intent to encourage or facilitate the crime is guilty not only of the crime that to his knowledge the perpetrator contemplated committing, but also for the natural and probable consequences of any criminal act he knowingly and intentionally aided and abetted. (CALJIC Nos. 3.01, 3.02.) The jury was told it had to determine whether the aider and abettor was guilty of the crime originally contemplated and, if so, whether other crimes charged were natural and probable consequences of the originally contemplated crime. (CALJIC No. 3.02.) Moreover, the jury was informed the aider and abettor is regarded as a principal in the crime "thus committed" by the person who directly perpetrated the crime and is "equally guilty thereof" provided the crime is a natural and probable consequence of the offense originally contemplated. (CALJIC Nos. 3.00, 3.02.)

During deliberations, the jury sent the trial court the following question: "Can a defendant be found guilty of aiding and abetting a murder in the second degree if the actual perpetrator of the same murder is determined to be guilty of murder in the first degree?" After discussing the matter with counsel, the trial court answered, "No."

---

*See footnote, *ante*, page 1570.

Windham contends the court's response misinstructed the jury. According to Windham, an aider and abettor may be convicted "of a different degree or lesser crime than the [perpetrator]" who commits a criminal act beyond that contemplated by the aider and abettor. In his view, the trier of fact may determine the ultimate offense committed by the perpetrator was not a reasonably foreseeable consequence of the criminal act aided and abetted but that an offense subsumed within the ultimate crime was such a consequence. Thus, the trier of fact could find the perpetrator guilty of the ultimate crime and convict the aider and abettor of a lesser offense.

Applied to the facts of this case, Windham's position is that the jurors could have found it was not reasonably foreseeable Woods would commit the premeditated killing of an innocent bystander, but it was reasonably foreseeable that Woods might commit the necessarily included offense of second degree murder, i.e., kill intentionally but without premeditation and deliberation or kill as a result of an intentional act dangerous to human life performed with knowledge of the danger and with conscious disregard for human life. Hence, if permitted to do so, the jurors could have found Windham guilty of second degree murder as an aider and abettor, despite the fact they found Woods guilty of first degree murder.

It follows, Windham argues, by answering the inquiry as it did, the trial court "withdrew from the jury a question of fact which the jury was responsible for finding, and constituted a directed verdict of first degree murder for any aider and abettor once the jury determined the actual perpetrator of the murder was guilty of first degree murder."

The People disagree, arguing that because aider and abettor liability is vicarious, it is an all-or-nothing proposition with respect to crimes committed by the perpetrator beyond that contemplated by the aider and abettor: the aider and abettor in effect stands in the shoes of the perpetrator and is responsible for the ultimate crime and degree thereof committed by the perpetrator or is guilty of nothing at all. In the People's view, if the crime ultimately committed was a reasonably foreseeable consequence of the criminal act aided and abetted, the aider and abettor is guilty of the ultimate crime. If that crime was not reasonably foreseeable, the aider and abettor is guilty of nothing other than the crime originally contemplated and committed and any offenses he or she may have committed personally in aiding and abetting the perpetrator.

Applied to the facts of this case, the People's position is that, because the crime Woods committed beyond that contemplated by Windham as an aider and abettor was murder in the first degree, Windham was guilty of that crime or guilty of nothing with respect to the killing of Chmelik.

As we shall explain, Windham has the better argument.

The answer to the question posed depends on the intent of the Legislature in enacting Penal Code section 31, which governs aider and abettor liability. (Further section references are to the Penal Code unless otherwise specified.)

Section 31 provides: "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, and all persons counseling, advising or encouraging children under the age of fourteen years, lunatics or idiots, to commit any crime, or who, by fraud, contrivance, or force, occasion the drunkenness of another for the purpose of causing him to commit any crime, or who, by threats, menaces, command or coercion, compel another to commit any crime, are principals in any crime so committed." ■ An aider and abettor is one who acts "with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense." (*People* v. *Beeman* (1984) 35 Cal.3d 547, 560 [199 Cal.Rptr. 60, 674 P.2d 1318], italics in original.)

■ Because section 31 has not been amended since its adoption as part of the Penal Code of 1872[2], it is the Legislature's intent at the time the section was enacted in 1872 which controls our analysis. (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 624 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].)

To ascertain said intent, we must look to the common law because California's first codes were derived from the precedents of common law. (See Civ. Code, § 22.2; *Keeler, supra,* 2 Cal.3d at p. 625.) It is presumed that, in enacting section 31, the Legislature "was familiar with the relevant rules of common law, and, when it couches its enactments in common law language, that its intent was to continue those rules in statutory form." (*Keeler, supra,* at p. 625.)

For felonies, "the common law divided guilty parties into principals and accessories. According to the ancient analysis only the actual perpetrator of

---

[2]The language of section 31 differs from California's original statute governing aider and abettor liability, which provided: "An accessory is he or she who stands by and aids, abets, or assists; or who not being present aiding, abetting, or assisting, hath advised and encouraged the perpetration of the crime. He or she who thus aids, abets or assists, advises or encourages, shall be deemed and considered as principal, and punished accordingly." (Stats. 1850, ch. 99, § 11, p. 230.) The phrase "punished accordingly" was interpreted to mean punished for the crime committed by the perpetrator "as if the [aider and abettor] had committed the offense." (*People* v. *Davidson* (1855) 5 Cal. 133, 134.)

the felonious deed was a principal. Other guilty parties were called 'accessories,' and to distinguish among these with reference to time and place they were divided into three classes: (1) accessories before the fact, (2) accessories at the fact, and (3) accessories after the fact. At a relatively early time the party who was originally considered an accessory at the fact ceased to be classed in the accessorial group and was labeled a principal. To distinguish him from the actual perpetrator of the crime he was called a principal in the second degree. Thereafter, in felony cases there were two kinds of principals, first degree and second degree, and two kinds of accessories, before the fact and after the fact." (Perkins & Boyce, Criminal Law (3d ed. 1982) Parties to Crime, ch. 6, § 8, p. 722, fns. omitted; see also LaFave & Scott, Substantive Criminal Law (1986) Parties to Crime, ch. 6, § 6.6, p. 125; 1 Wharton's Criminal Law (14th ed. 1978) Parties, ch. 4, § 29, p. 157.)

A principal in the first degree was one who perpetrated a crime "not only with his own hands, but 'through the agency of mechanical or chemical means, as by instruments, poison or powder, or by an animal, child, or other innocent agent' acting at his direction." (Perkins & Boyce, *op. cit. supra*, ch. 6, § 8, at p. 736.) A principal in the second degree was one who "did not commit the crime with his own hands" but who "aided, counseled, commanded or encouraged the commission thereof in his presence, either actual or constructive." (*Id.*, at pp. 736, 738.)[3] An accessory before the fact was one who "aided, counseled or encouraged the commission [of the crime], without having been present either actually or constructively at the moment of perpetration." (Perkins & Boyce, *op. cit. supra*, ch. 6, § 8, at p. 744.) An accessory after the fact was one who, after the commission of the crime, and with knowledge of the other's guilt, rendered assistance to hinder the detection, arrest, trial or punishment of a party to the crime. (*Id.*, at pp. 748; see also LaFave & Scott, *op. cit. supra*, ch. 6, § 6.6, at pp. 126-130; 1 Wharton's Criminal Law, *op. cit. supra*, ch. 4, §§ 30-33, at pp. 159-171.)

---

[3]One was regarded as constructively present whenever the person cooperated with the perpetrator and was " 'so situated as to be able to aid him, with a view known to the other, to insure success in the accomplishment of the common purpose.' " (*Id.*, at p. 741.) The typical example was the lookout who was stationed outside while his or her associates entered a building to commit a crime. "The most extreme application of the doctrine of 'constructive presence' involved the holdup of a stagecoach. One of the conspirators stationed himself on a mountain-top, thirty or forty miles from the intended ambush, and signaled the approach of the vehicle by means of a controlled fire. Because he was so situated to be of assistance at the moment, he was held to be a principal in the second degree." (*Ibid.*; see also *United States* v. *Peichev* (9th Cir. 1974) 500 F.2d 917 [for an airplane hijacking committed in California, constructive presence was construed liberally to extend to an aider and abettor who was en route to an airstrip in Canada to rendezvous with the perpetrators and help them escape capture]; LaFave & Scott, *op. cit. supra*, ch. 6, § 6.6, at p. 128.)

In enacting section 31, the Legislature abolished the common law distinction between principals of the first and second degree and the distinction between principals and accessories before the fact. (*People* v. *Hodges* (1865) 27 Cal. 340, 341; *People* v. *Bearss* (1858) 10 Cal. 68, 69.)[4]

However, a common law rule of aider and abettor liability which has survived in California is the doctrine that one who incites the commission of a crime can be liable not only for the crime incited but also for any incidental consequences which reasonably might be expected to result from the intended wrong. (Perkins & Boyce, *op. cit. supra,* ch. 6, § 8, at p. 745; 1 Wharton's Criminal Law, *op. cit. supra,* ch. 4, § 35, at p. 181.)

As the California Supreme Court has noted, an aider and abettor "is guilty not only of the offense he intended to facilitate or encourage, but also of any reasonably foreseeable offense committed by the person he aids and abets." (*People* v. *Croy* (1985) 41 Cal.3d 1, 12, fn. 5 [221 Cal.Rptr. 592, 710 P.2d 392].) "Like the conspirator whose liability is predicated on acts other than and short of those constituting the elements of the charged offense, if the acts are undertaken with the intent that the actual perpetrator's purpose be facilitated thereby, [the aider and abettor] is a principal and liable for the commission of the offense. Also like a conspirator, he is guilty not only of the offense he intended to facilitate or encourage, but also of any reasonably foreseeable offense committed by the person he aids and abets." (*Ibid.*; see *People* v. *Price* (1991) 1 Cal.4th 324, 442 [3 Cal.Rptr.2d 106, 821 P.2d 610]; *People* v. *Cooper* (1991) 53 Cal.3d 1158, 1162, fn. 3 [282 Cal.Rptr. 450, 811 P.2d 742]; *Beeman, supra,* 35 Cal.3d at p. 560.)[5]

In reciting this rule of "vicarious" liability (*Croy, supra,* 41 Cal.3d at p. 12, fn. 5), the Supreme Court and the decisions upon which it has relied did not refer to the language of section 31. Nevertheless, we must conclude the

[4]The common law equivalent of an accessory after the fact is defined in section 32: "Every person who, after a felony has been committed, harbors, conceals or aids a principal in such felony, with the intent that said principal may avoid or escape from arrest, trial, conviction or punishment, having knowledge that said principal has committed such felony or has been charged with such felony or convicted thereof, is an accessory to such felony." Except where a different punishment is prescribed by statute, an accessory is punishable by a fine and/or incarceration up to three years in state prison or up to one year in county jail. (§ 33.)

[5]"[A] defendant whose liability is predicated on his status as an aider and abettor need not have intended to encourage or facilitate the particular offense ultimately committed by the perpetrator. His knowledge that an act which is criminal was intended, and his action taken with the intent that the act be encouraged or facilitated, are sufficient to impose liability on him for any reasonably foreseeable offense committed as a consequence by the perpetrator." (*Croy, supra,* 41 Cal.3d at p. 12, fn. 5; see *People* v. *Garrison* (1989) 47 Cal.3d 746, 778 [254 Cal.Rptr. 257, 765 P.2d 419]; *Beeman, supra,* 35 Cal.3d at p. 560; *People* v. *Durham* (1969) 70 Cal.2d 171, 181 [74 Cal.Rptr. 262, 449 P.2d 198].)

court impliedly determined that, in specifying an aider and abettor is liable for "any crime so committed" by the perpetrator, the Legislature intended—consistent with common law—that the aider and abettor is guilty not only of the criminal act originally contemplated and abetted but also of any other crime by the perpetrator which is a reasonably foreseeable consequence of the offense originally contemplated by the aider and abettor.

It follows, for example, where "any crime so committed" by the perpetrator is determined to be first degree murder, it is murder in the first degree for which section 31 assigns responsibility to an aider and abettor *provided said crime is a reasonably foreseeable consequence of the criminal act originally contemplated by the perpetrator and the aider and abettor.* (*Croy, supra,* 41 Cal.3d at p. 12, fn. 5.) Of course, in addition to vicarious liability for any reasonably foreseeable offenses committed by the perpetrator, the aider and abettor is directly liable for the crimes he or she commits personally in aiding and abetting the perpetrator to engage in other offenses.

The issue raised in this appeal is whether, as to crimes committed beyond that originally contemplated, section 31 permits an aider and abettor to be convicted of a lesser crime or lesser degree of crime than the ultimate offense committed by the perpetrator. Stated another way, when the perpetrator commits a crime other than that contemplated by the aider and abettor, does the aider and abettor's liability for "any crime so committed" (§ 31) extend only to the ultimate offense committed by the perpetrator or does it encompass necessarily included crimes within the offense committed? (See *People* v. *Geiger* (1984) 35 Cal.3d 510, 517, fn. 4 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055] [an offense is necessarily included in the charged offense if under the statutory definition of the charged offense it cannot be committed without committing the lesser offense, or if the charging allegations of the accusatory pleading include language describing the offense in such a way that if committed as specified the lesser offense is necessarily committed].)

To answer this question we again look first to common law as an indicator of legislative intent.

At early common law, principals and accessories were guilty of the same crime. Even the accessory after the fact was guilty of the original felony. "His assistance to the known felon was thought of as relating back to that crime and tainting him with the guilt of that very offense." (Perkins & Boyce, *op. cit. supra,* ch. 6, § 8, at pp. 727-728, 729, 757; see also 1 Wharton's Criminal Law, *op. cit. supra,* ch. 4, § 34, at pp. 172-174.) Moreover, all felonies were punishable by death. (Perkins & Boyce, *op. cit.*

*supra*, ch. 6, § 8, at p. 730.) Hence, "[u]nder the original rule, 'principals and accessories were felons, and were, as such, punishable by death.'" (*Id.*, at p. 757.)

As Parliament began adding numerous offenses to the group of common law felonies, there "came to be great dissatisfaction with the rule applying the death penalty in all felony cases, . . ." (Perkins & Boyce, *op. cit. supra*, ch. 6, § 8, at pp. 730, 751.) This "led to the invention of various devices for the purpose of avoiding an excessive number of executions in felony cases, . . ." (*Id.*, at p. 751.) Among the examples of such devices were entitling accessories after the fact to the benefit of clergy[6] and developing technicalities in jurisdiction, pleading, trial and degree of guilt. (*Perkins & Boyce, op. cit. supra*, at pp. 730-731, 751-758; see also LaFave & Scott, *op. cit. supra*, ch. 6, § 6.6, at pp. 130-132.)

As to degree of guilt, it became recognized that some aiders and abettors could be convicted of a crime less than the ultimate offense committed by the perpetrator and, thus, could be punished less severely than the perpetrator. (Perkins & Boyce, *op. cit. supra*, ch. 6, § 8, at pp. 738, 743, 753, 757; 1 Wharton's Criminal Law, *op. cit. supra*, ch. 4, § 34, at pp. 172-174.)

One basis for this common law rule which permitted an aider and abettor to be found guilty of a crime or degree of crime different than the perpetrator's ultimate offense does not exist in California—according to Perkins, "the reason for the principal-accessory distinction ceased to exist when most felonies were removed from the category of capital crimes[.]" (Perkins & Boyce, *op. cit. supra*, ch. 6, § 8, at pp. 759, 765-766.)

 Nevertheless, the continuing viability of the common law rule of aider and abettor liability for reasonably foreseeable consequences of the criminal act originally contemplated compels the conclusion that, in enacting section 31, the Legislature intended that an aider and abettor may be found

---

[6]At common law, a clergyman could not be given the death sentence. This exemption from capital punishment was known as the "benefit of clergy." Originally, it was allowed to clergymen only. Later, it was extended to all who were connected with the church, including its most subordinate officers, then called "clerks." At one point there existed a presumption that any man who could read must be a member of the clergy or an officer of the church. (Perkins & Boyce, *op. cit. supra*, ch. 6, § 8, at p. 730.) The privilege was claimed after conviction by a "species of motion in arrest of judgment, technically called 'praying his clergy.'" (Black's Law Dictionary (5th ed. 1979) at p. 144.) "As a means of testing his clerical character, [the accused] was given a psalm to read . . . and, upon his reading it correctly, he was turned over to the ecclesiastical courts, to be tried by the bishop or a jury of twelve clerks." (*Ibid.*) This privilege became so abused that Parliament began enacting that certain crimes were felonies "without the benefit of clergy." The privilege was abolished in 1827. (*Ibid.*)

guilty of a lesser crime or lesser degree of crime than the ultimate offense the perpetrator is found to have committed.

 █▪█ To determine a defendant's guilt or innocence based on aider and abettor liability, a jury must employ a four-part analysis (assuming the aider and abettor is charged with the crime originally contemplated by the perpetrator as well as other crimes which allegedly were reasonably foreseeable consequences of the original crime).[7] Although the perpetrator and the aider and abettor need not be tried jointly, the jury first must determine the crimes and degrees of crimes originally contemplated and committed, if any, by the perpetrator. Next, the jury must decide whether the aider and abettor knew of the perpetrator's intent to commit the originally contemplated criminal acts and whether the aider and abettor intended to encourage or facilitate the commission of those acts. In other words, the jury must determine if the aider and abettor is liable vicariously for, i.e., guilty of, the crime or crimes originally contemplated. Then the jury must determine whether other crimes and degrees of crimes charged against the aider and abettor were committed by the perpetrator. If so, the jury must determine whether those crimes, although not necessarily contemplated at the outset, were reasonably foreseeable consequences of the original criminal acts encouraged or facilitated by the aider and abettor. (*Croy, supra,* 41 Cal.3d at p. 12, fn. 5; *Durham, supra,* 70 Cal.2d at p. 181; *People* v. *Rogers* (1985) 172 Cal.App.3d 502, 515 [217 Cal.Rptr. 809].) In other words, the jury must determine if the aider and abettor is liable vicariously for, i.e., guilty of, other crimes beyond those contemplated originally.

Because this analysis requires separate factual determinations for (1) what crimes have been committed, and (2) what crimes are the reasonably foreseeable consequences of the offense originally contemplated, it is self-evident that *the aider and abettor does not stand in the same position as the perpetrator.* While the perpetrator is liable for *all* of his or her criminal acts, the aider and abettor is liable vicariously only for those crimes committed by the perpetrator which were reasonably foreseeable under the circumstances. Accordingly, an aider and abettor may be found guilty of crimes

---

[7]We know of no reason why the prosecution should be required to charge the aider and abettor with the crime originally contemplated and committed or with all of the reasonably foreseeable crimes which resulted therefrom. As a matter of prosecutorial discretion, the prosecutor is empowered to select which crimes, if any, to charge against an aider and abettor. (*Daly* v. *Superior Court* (1977) 19 Cal.3d 132, 148 [137 Cal.Rptr. 14, 560 P.2d 1193]; *People* v. *Brigham* (1989) 216 Cal.App.3d 1039, 1052 [265 Cal.Rptr. 486]; *People* v. *Adams* (1974) 43 Cal.App.3d 697, 707-708 [117 Cal.Rptr. 905]; cf. *Davis* v. *Municipal Court* (1988) 46 Cal.3d 64, 77 [249 Cal.Rptr. 300, 757 P.2d 11]; 4 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Introduction to Criminal Procedure, § 1790, pp. 2110-2112.)

committed by the perpetrator which are less serious than the gravest offense the perpetrator commits, i.e., *the aider and abettor and the perpetrator may have differing degrees of guilt based on the same conduct depending on which of the perpetrator's criminal acts were reasonably foreseeable under the circumstances and which were not.* (See § 4 [provisions of the Penal Code "are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice"].)

■ The factual determination whether a crime committed by the perpetrator was a reasonably foreseeable consequence of the crime or crimes originally contemplated is not founded on the aider and abettor's subjective view of what might occur. Rather, liability is based on an "objective analysis of causation"; i.e., whether a reasonable person under like circumstances would recognize that the crime was a reasonably foreseeable consequence of the act aided and abetted. (*People* v. *Brigham, supra,* 216 Cal.App.3d at p. 1051.) The finding will depend on the circumstances surrounding the conduct of both the perpetrator and the aider and abettor. (E.g., *id.,* at pp. 1054-2056.)

The analysis of aider and abettor liability would be relatively simple if the prosecution were required to charge not only the greatest crime committed by the perpetrator but also every necessarily included crime, e.g., if for a homicide committed with a firearm the prosecution charged violations ranging from battery to assault with a firearm to murder. The jury could evaluate each to determine if the crime was committed and if it was a reasonably foreseeable consequence of the crime aided and abetted. ■ However, the prosecution need not file charges for every necessarily included offense. (*Brigham, supra,* 216 Cal.App.3d at p. 1052 [the prosecutor has discretion to determine which crimes will be charged and on what theory they will be prosecuted]; see fn. 7, *ante.*)

Although necessarily included offenses need not be charged, the perpetrator nevertheless committed them as he or she committed the greater criminal offense. (*People* v. *Mincey* (1992) 2 Cal.4th 408, 452 [6 Cal.Rptr.2d 822, 827 P.2d 388]; *People* v. *Clark* (1990) 50 Cal.3d 583, 636 [268 Cal.Rptr. 399, 789 P.2d 127]; 6 Witkin, Cal. Criminal Law (2d ed. 1989) Trial, § 2936, pp. 3603-3604, Judgment and Attack in Trial Court, § 3038, p. 3755.) ■ The fact the perpetrator cannot be found guilty of both a greater and a necessarily included offense (*People* v. *Pearson* (1986) 42 Cal.3d 351, 355 [228 Cal.Rptr. 509, 721 P.2d 595] [the greater crime subsumes the lesser crime]; accord *People* v. *Griffin* (1988) 46 Cal.3d 1011, 1030 [251 Cal.Rptr. 643, 761 P.2d 103]) should not preclude an aider and abettor from being found guilty of an uncharged, necessarily included offense when the lesser,

but not the greater, offense is a reasonably foreseeable consequence of the crime originally aided and abetted.

Therefore, in determining aider and abettor liability for crimes of the perpetrator beyond the act originally contemplated, the jury must be permitted to consider uncharged, necessarily included offenses where the facts would support a determination that the greater crime was not a reasonably foreseeable consequence but the lesser offense was such a consequence. Otherwise, as we shall discuss, the jury would be given an unwarranted, all-or-nothing choice for aider and abettor liability. (See *People* v. *Wickersham* (1982) 32 Cal.3d 307, 324 [185 Cal.Rptr. 436, 650 P.2d 311], and discussion, *post.*)

Nothing in section 31 supports the People's position that vicarious liability is an all-or-nothing proposition, i.e., that the aider and abettor is guilty of the greatest offense committed by the perpetrator or is not liable for any crime committed beyond that originally contemplated. As we have explained, the apparent intent of section 31 is to make the aider and abettor a principal in *any* crime committed by the perpetrator which is a reasonably foreseeable consequence of the criminal act originally contemplated. Accordingly, a fact finder can convict the perpetrator of one crime and find the aider and abettor guilty of a necessarily included offense where the evidence establishes that only the lesser offense was a reasonably foreseeable consequence of the crime originally contemplated.

A contrary interpretation could lead to absurd results. Take, for example, the following scenario: one aids and abets a shoplifter under peculiar circumstances where it is debatable whether the eruption of violence during the crime is a reasonably foreseeable consequence, e.g., the shoplifter is a known pacifist who has been arrested before without incident, and the circumstances of the intended shoplift indicate it is highly unlikely the shoplifter would be detected. Nonetheless, the shoplifter is caught and stabs the store owner as the shoplifter flees. The prosecutor charges the perpetrator and the aider and abettor with robbery and attempted murder. The jury convicts the perpetrator of both crimes but concludes the offenses were not reasonably foreseeable consequences of the aider and abettor's act of facilitating the commission of the shoplift. Under the People's view of section 31 vicarious liability, the jury would have to acquit the aider and abettor even though it is clear that he is guilty of petty theft as an aider and abettor.

We must presume the Legislature did not intend this absurd result. (*In re Head* (1986) 42 Cal.3d 223, 232 [228 Cal.Rptr. 184, 721 P.2d 65].) Thus, we must adopt a reasonable interpretation of section 31 vicarious liability and

reject that which would lead to an unjust and absurd result. (*People* v. *Catelli* (1991) 227 Cal.App.3d 1434, 1448 [278 Cal.Rptr. 452].)

One may retort that the prosecution can avoid the absurd result in the aforesaid scenario by charging the necessarily included offense of petty theft. However, as we have noted, the prosecution cannot be compelled to charge all necessarily included offenses. (See fn. 7, *ante*.) ■ Moreover, as to the perpetrator, the trial court is not required to instruct on necessarily included offenses when the evidence establishes that, if guilty, the perpetrator is guilty of the greater offense. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 715 [112 Cal.Rptr. 1, 518 P.2d 913], disapproved on other grounds in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1]; *People* v. *Morrison* (1964) 228 Cal.App.2d 707, 713 [39 Cal.Rptr. 874].)

■ Therefore, unless the trial court has a duty to inform the jury that an aider and abettor may be convicted of a crime less than the ultimate offense committed by the perpetrator when the evidence raises a question whether the greater offense is a reasonably foreseeable consequence of the act aided and abetted but establishes that a lesser offense is such a consequence, the jury would be provided with an unwarranted all-or-nothing choice with respect to the aider and abettor. In the aforesaid scenario, when faced with uncontroverted evidence that the aider and abettor was liable vicariously for petty theft, a jury may be reluctant to acquit of the greater crimes if left without the alternative of a guilty verdict for petty theft. (See *Wickersham*, *supra*, 32 Cal.3d at p. 324; accord *People* v. *Webster* (1991) 54 Cal.3d 411, 444, fn. 17 [285 Cal.Rptr. 31, 814 P.2d 1273]; *People* v. *Ramkeesoon* (1985) 39 Cal.3d 346, 352 [216 Cal.Rptr. 455, 702 P.2d 613].)

Either result (acquittal of the aider and abettor although the evidence establishes guilt of a lesser offense, or conviction for the greater offense because the jury has no option of finding the defendant liable for the lesser crime) is unjust and unacceptable. As the California Supreme Court has observed, "the People have no legitimate interest in obtaining a conviction on a greater offense than that established by the evidence, [and] a defendant has no right to an acquittal when the evidence is sufficient to establish a lesser included offense." (*Sedeno*, *supra*, 10 Cal.3d at p. 716, citing *People* v. *St. Martin* (1970) 1 Cal.3d 524, 533 [83 Cal.Rptr. 166, 463 P.2d 390].)

■ Windham properly recognizes that his liability as an aider and abettor for the killing of Chmelik depended on a factual determination that, not only was the killing a reasonably foreseeable consequence of the offense originally contemplated, but that the gravity of the killing, i.e., the *degree of the murder*, was such a consequence. In the unpublished part of this opinion

(pt. VIII), we conclude the facts of this case support the jury's determination that the killing was premeditated and deliberated, i.e., in the first degree. We also find there is sufficient evidence to support the jury's determination that first degree murder was a reasonably foreseeable consequence of the assaults with firearms on Allen and Johnson committed in an effort to locate and harm Walker (see pt. III, *post*). However, *the jury made the second determination without the benefit of an alternative.* The court effectively told the jurors they must convict Windham of first degree murder as an aider and abettor or acquit him of any liability for the killing. Had the trial court answered in the affirmative when asked by the jurors whether a defendant could be guilty of murder in the second degree as an aider and abettor if the perpetrator is determined to be guilty of murder in the first degree, we can envision the jury deciding that Windham was guilty of second degree not first degree murder. Under the circumstances of this case, the jury, if given the choice, could have determined it was not reasonably foreseeable Woods would commit the premeditated, cold-blooded killing of an innocent bystander, but that it was a reasonably foreseeable consequence that Woods might commit the necessarily included offense of second degree murder, i.e., kill intentionally but without premeditation and deliberation or kill as a result of an intentional act dangerous to human life performed with knowledge of the danger and with conscious disregard for human life. (See pt. III, *post.*)

In effect, the jury was given an unwarranted all-or-nothing choice with respect to aider and abettor liability for the killing of Chmelik. Faced with evidence from which it could conclude that only second degree murder was a reasonably foreseeable consequence of Windham's aiding and abetting Woods in assaulting Allen and Johnson, but having no option to convict Windham of second degree murder, the jury may have been reluctant to acquit him of the greater offense of first degree murder. Stated another way, the jury may have returned a verdict of guilt on first degree murder to avoid the absurd result of absolving Windham of any responsibility for a killing which was a reasonably foreseeable consequence of his act of aiding and abetting the violent assaults on Allen and Johnson. This illustrates why the jury should have been told it could find a defendant guilty of second degree murder as an aider and abettor even if it determined the perpetrator was guilty of first degree murder.

Our conclusion that an aider and abettor can be found guilty of a crime less than the ultimate offense committed by the perpetrator is consistent with this court's decision in *People* v. *Blackwood* (1939) 35 Cal.App.2d 728 [96 P.2d 982]. In *Blackwood,* the jury found the perpetrator guilty of murder in the first degree and his wife guilty of murder in the second degree as an

aider and abettor. The trial court reduced the wife's conviction to manslaughter. On appeal, the wife argued "if she is not guilty of murder in the second degree, as being equally guilty with her husband as an aider and abettor, she cannot be held for manslaughter, since she did not commit a homicide herself and that is not the crime for which judgment was entered against her husband." (*Id.*, at p. 732.) The *Blackwood* court disagreed: "We do not believe that the rule that the two principals are equally guilty is so inflexible that a jury might not find them guilty of different degrees of crime even though they are tried jointly. For the evidence against them is not necessarily precisely the same."[8]

*Blackwood*'s recognition that the evidence against a perpetrator and an aider and abettor is not "precisely the same" is applicable to the present case where Windham's liability turns on the reasonable foreseeability of Woods's conduct, an element which has no application to Woods himself.

We also note that other cases have held "an accused, as an aider and abettor, may be convicted of a lesser crime than the perpetrator when they are tried together." (*People* v. *Taylor* (1974) 12 Cal.3d 686, 693, fn. 8 [117 Cal.Rptr. 70, 527 P.2d 622], citing *Blackwood* as well as *People* v. *Braun* (1973) 29 Cal.App.3d 949, 973-974 [106 Cal.Rptr. 56], disapproved on other grounds in *People* v. *Green* (1980) 27 Cal.3d 1, 25, fn. 10 [164 Cal.Rptr. 1, 609 P.2d 468], and *People* v. *Finch* (1963) 213 Cal.App.2d 752, 777 [29 Cal.Rptr. 420]; see also *People* v. *Griffith* (1960) 181 Cal.App.2d 715 [5 Cal.Rptr. 620]; *People* v. *Martinez* (1966) 239 Cal.App.2d 161, 164, 179 [48

---

[8]*Blackwood* noted the firing of shots by the perpetrator "warranted an inference of the malice which is essential to the crime of murder, while Mrs. Blackwood might not be chargeable with guilty knowledge of that malice, but might nevertheless be guilty of aiding and abetting him in the commission of voluntary manslaughter 'upon a sudden quarrel or heat of passion.' For this reason a jury might be justified . . . in finding the two principals guilty of different degrees of crime, and the trial court might properly . . . reduce one of the judgments and not the other." (*Id.*, at p. 733, citation omitted.)

This analysis is troubling because it seems to have applied a subjective test rather than the required objective test of causation. (See *Brigham, supra*, 216 Cal.App.3d at p. 1051.) As the California Supreme Court recently noted, the aider and abettor need not have intended to encourage or facilitate the particular crime ultimately committed by the perpetrator. His or her knowledge that a criminal act was intended, and his or her action taken with the intent to encourage or facilitate the act, are sufficient to impose liability for any reasonably foreseeable offense committed by the perpetrator. (*Croy, supra*, 41 Cal.3d at p. 12, fn. 5.) Hence, the fact Mrs. Blackwood aided and abetted the homicide under circumstances which indicate *she* was acting upon sudden quarrel or heat of passion would not absolve her of vicarious liability for the perpetrator's premeditated killing if, viewed objectively, the commission of murder in the first degree was a reasonably foreseeable consequence of Mrs. Blackwood's act of facilitating the killing.

Cal.Rptr. 521]; *People* v. *Simpson* (1944) 66 Cal.App.2d 319 [152 P.2d 339].)[9]

## II

■■■■ In a related argument, Windham contends the trial court not only should have told the jurors they could convict him of second degree murder as an aider and abettor, but also had a duty to instruct sua sponte on all necessarily included offenses which may have been reasonably foreseeable consequences of Windham's aiding and abetting Woods in the assaults with firearms on Allen and Johnson.[10] Citing *Wickersham, supra,* 32 Cal.3d 307 and *Geiger, supra,* 35 Cal.3d 510, Windham argues: "In order for the jury to determine the natural and probable consequences of any particular act, it must have the full spectrum of offenses that might indeed be a consequence of the aided and abetted act . . . . *All* offenses that could be a natural and probable consequence must be submitted to the jury if the jury is to properly decide the issue." (Italics in original.)

As we shall explain, the trial court had no duty to instruct sua sponte on the full spectrum of offenses conceivably committed by Woods.

■■■ Woods, as the perpetrator, was not entitled to instructions on voluntary or involuntary manslaughter, assault with a deadly weapon, or any other lesser offense because the evidence did not suggest that his killing of Chmelik was anything less than second degree murder. A trial court need not instruct on lesser offenses where there is no evidence the offense was less than that charged. (*People* v. *Duncan* (1991) 53 Cal.3d 955, 970 [281 Cal.Rptr. 273, 810 P.2d 131]; *Wickersham, supra,* 32 Cal.3d at pp. 323-324.)

---

[9]In *Braun* and *Finch,* the perpetrators were convicted of first degree murder and the accomplices were convicted of second degree murder. *Braun* rejected the accomplice's claim of fatal inconsistency, explaining that the jury was instructed on first degree murder and second degree kidnap-murder and the jury could have found the accomplice guilty of the latter. (29 Cal.App.3d at p. 974.) In addition, the verdict could have been based on the accomplice's assertion of diminished capacity. (*Ibid.*) *Finch,* on the other hand, does not hold it is proper to convict of an aider and abettor for a crime less than the ultimate crime committed by the perpetrator. *Finch* simply concluded the aider and abettor "cannot complain of a finding by the jury more favorable to her than the law and the evidence warranted." (213 Cal.App.2d at p. 777.) However, *Griffith* and *Simpson* held that, under section 31, the perpetrator and the aider and abettor "may be severally convicted, convicted of a lesser offense, or acquitted without reference to the conviction or acquittal of the other." (*Griffith, supra,* at p. 719; *Simpson, supra,* at p. 329.) *Taylor* undermines this assertion in part by holding that, where the accomplice's liability is wholly vicarious, collateral estoppel precludes conviction of the accomplice following acquittal of the perpetrator. (12 Cal.3d at pp. 689, 691-698.)

[10]We reject Windham's contention that the trial court erred in failing to instruct on lesser related offenses. Windham did not request instructions on lesser related crimes, and the trial court had no duty to give such instructions sua sponte. (*Geiger, supra,* 35 Cal.3d at pp. 526-530.)

■ Even when lesser offense instructions are not required for the perpetrator because the evidence establishes that, if guilty at all, the perpetrator is guilty of the greater offense, the trial court may have a duty to instruct sua sponte on necessarily included offenses as to aider and abettor liability. If the evidence raises a question whether the offense charged against the aider and abettor is a reasonably foreseeable consequence of the criminal act originally aided and abetted but would support a finding that a necessarily included offense committed by the perpetrator was such a consequence, the trial court has a duty to instruct sua sponte on the necessarily included offense as part of the jury instructions on aider and abettor liability. Otherwise, as discussed in part I, *ante*, the jury would be given an unwarranted, all-or-nothing choice concerning aider and abettor liability.

However, the trial court need not instruct on a particular necessarily included offense if the evidence is such that the aider and abettor, if guilty at all, is guilty of something beyond that lesser offense, i.e., if the evidence establishes that a greater offense was a reasonably foreseeable consequence of the criminal act originally contemplated, and no evidence suggests otherwise. (*Duncan, supra,* 53 Cal.3d at p. 970; *Wickersham, supra,* 32 Cal.3d at pp. 323-324; see *Sedeno, supra,* 10 Cal.3d at p. 715; *People v. Morrison, supra,* 228 Cal.App.2d at p. 713.)

In this case, the evidence established beyond question that second degree murder (i.e., an intentional killing in circumstances insufficient to establish deliberation and premeditation or a killing resulting from an intentional act inherently dangerous to human life committed with knowledge of, and conscious disregard for, the danger to human life) was a reasonably foreseeable consequence of the initial armed assaults on Allen and Johnson. Because no evidence suggested that second degree murder ensuing from the armed onslaught was unforeseeable (see pt. III, *post*)[11], it was not necessary to instruct on included offenses less than second degree murder.[12]

---

[11]Windham mistakenly asserts that *People v. Godinez* (1992) 2 Cal.App.4th 492 [3 Cal.Rptr.2d 325] authorizes a manslaughter verdict in this case. *Godinez* held that, if the jury in that case believed the appellant's testimony, "it could have concluded the fatal stab wounds were not a reasonably foreseeable consequence of the fight he knowingly encouraged—a fight between unarmed combatants." In that event, Godinez would not be guilty of aiding and abetting the killing. Here, however, the jury could not have reached a similar conclusion in light of the undisputed evidence that the assailants conducted an *armed* assault in order to retaliate for another armed assault in which a victim was shot.

[12]Windham contends his attempted murder conviction must be reversed because of the failure to instruct on lesser offenses. In the alternative, Windham suggests the conviction should be modified to assault with a deadly weapon. We disagree. Given the nature of the armed attack on Allen and Johnson, it was foreseeable that Woods might attempt to murder an innocent bystander who (unlike Allen and Johnson) might be able to identify him as a

## III

Windham contends his murder and attempted murder convictions must be reversed because the evidence does not support the jury's implied finding that the Chmelik and McMahon shootings were reasonably foreseeable consequences of the armed assaults on Allen and Johnson which Windham aided and abetted in an effort to locate and attack Walker. We disagree.

 Viewed most favorably to the judgment (*People* v. *Hernandez* (1988) 47 Cal.3d 315, 345-346 [253 Cal.Rptr. 199, 763 P.2d 1289]), the evidence shows that Windham was present when Walker, a rival gang member, shot Windham's friend in the foot. Later, Windham accompanied Woods and his associates to the apartment of Walker's acquaintances, Allen and Johnson. Woods, Windham and the others wore ski masks and were armed with guns. After Woods beat up one of the women's neighbors, Windham acted as a lookout while the others forcibly entered the apartment, demanded to know Walker's whereabouts, assaulted both women, and shot Johnson. From Allen's testimony, it may be inferred that Windham warned the others to leave because he believed someone had called the police. The jury reasonably could deduce that Windham knew of and shared his associates' intent to commit the armed assaults on Allen and Johnson to coerce them into revealing Walker's location so defendants could harm Walker in retaliation for his shooting of their friend and fellow gang member. (*Beeman, supra,* 35 Cal.3d at p. 560.)

 Whether the Chmelik and McMahon shootings were reasonably foreseeable consequences of the armed attacks on Allen and Johnson was a question of fact for the jury. (*Croy, supra,* 41 Cal.3d at p. 12; *Durham, supra,* 70 Cal.2d at p. 181.) The jury could have answered that question in the affirmative by inferring that Chmelik and McMahon were shot because they had witnessed the perpetrators of the Allen and Johnson offenses during the ongoing theft of the tires from the apartment. (See *Cooper, supra,* 53 Cal.3d at p. 1165 [robbery continues while loot is carried away].) It is reasonably foreseeable that a perpetrator of armed assaults on three victims, having beaten one and shot another, might with deliberation and premeditation seek to eliminate witnesses who had seen the perpetrator and his group without their masks and could connect them with the wrongdoing. Thus, Windham's convictions for first degree murder and attempted murder as an aider and abettor are supported by substantial evidence.

---

perpetrator. (See pt. III, *post.*) Even though reasonable jurors might disagree as to the foreseeability of a premeditated first degree murder, we perceive no basis upon which they could disagree as to the foreseeability of an attempted murder. Thus, lesser included offense instructions on that count were not required.

A fortiori, the evidence supports a finding that Windham is liable as an aider and abettor for second degree murder as a necessarily included offense within the first degree murder of Chmelik. (See pts. I and II, *ante*.) Woods was in a violent mood when he, Windham and the others went looking for Walker. Armed with guns and wearing ski masks to conceal their identities, the group obviously intended to harm Allen and Johnson to coerce them into revealing Walker's whereabouts. The attacks began when, in Windham's presence, Woods beat up an innocent bystander outside the women's apartment. It was reasonably foreseeable that, having violently attacked one bystander prior to the armed assaults on Allen and Johnson, Woods would attack other bystanders he came across during the search for Walker. Because Woods was armed, it was reasonably foreseeable Woods would intentionally kill a bystander or at least kill while committing an intentional act the natural consequences of which were dangerous to human life, e.g., shoot at a bystander.

In sum, the intentional killing of Chmelik with deliberation and premeditation by means of a firearm necessarily included conduct sufficient for second degree murder, i.e., both an intentional killing and a killing resulting from the commission of an intentional act—shooting at Chmelik—the natural consequences of which were dangerous to human life and which was performed deliberately with knowledge of the danger to, and with conscious disregard for, human life. Considering the apparent planning of the episode which led to Chmelik's death (including the facts the culprits armed themselves with weapons, donned masks, assaulted one bystander, kicked in the apartment door, threatened Allen, Johnson and Walker with death, and shot Johnson), absolutely no evidence suggested that second degree murder of another bystander, Chmelik, was unforeseeable. Consequently, *at a minimum*, the evidence supports Windham's conviction for second degree murder as an aider and abettor.

### IV

In part I, *ante*, we concluded the trial court erred in failing to instruct the jury that it could find Windham guilty of second degree murder as an aider and abettor even though it determined Woods was guilty of first degree murder as the perpetrator of Chmelik's killing. Windham claims this error compels us to reverse his first degree murder conviction and to remand the matter for retrial on that count. In the alternative, he argues his conviction should be modified to second degree murder.

As discussed in parts II and III, *ante*, if guilty as an aider and abettor for the killing of Chmelik, Windham was guilty of at least second degree

murder. Hence, the court's instructional error affected only the degree of the crime of which Windham was convicted. ■■■ "Where error goes only to the degree of the offense for which a defendant is convicted, the appellate court may reduce the conviction to a lesser degree and affirm the judgment as modified, thereby obviating the necessity for a retrial." (*People* v. *Ordonez* (1991) 226 Cal.App.3d 1207, 1223 [277 Cal.Rptr. 382], citing § 1260.) However, "[w]hen a greater offense must be reversed, but a lesser included offense could be affirmed, we give the prosecutor the option of retrying the greater offense, or accepting a reduction to the lesser offense." (*People* v. *Kelly* (1992) 1 Cal.4th 495, 528 [3 Cal.Rptr.2d 677, 822 P.2d 385].)

If, after the filing of the remittitur in the trial court, the People do not bring Windham to retrial on the murder count within the time limit set forth in section 1382, subdivision (a)(2)—60 days unless waived by the defendant—the trial court shall proceed as if the remittitur constituted a modification of the judgment to reflect a conviction of second degree murder and shall resentence Windham accordingly. (*People* v. *Edwards* (1985) 39 Cal.3d 107, 118 [216 Cal.Rptr. 397, 702 P.2d 555].)

V-XIV*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

Defendant Windham's conviction of first degree murder is reversed unless the People accept a reduction of the conviction to second degree murder. If, after the filing of the remittitur in the trial court, the People do not bring Windham to retrial on the murder count within the time limit set forth in section 1382, subdivision (a)(2)—60 days unless waived by the defendant—the trial court shall proceed as if the remittitur constituted a modification of the judgment to reflect a conviction of second degree murder and shall resentence Windham accordingly.

That portion of the judgment imposing a sentence enhancement pursuant to section 667.5, subdivision (b), upon defendant Woods is reversed.

In all other respects, the judgment as to each defendant is affirmed.

Raye, J., concurred.

**SPARKS, Acting P. J.,** Dissenting.—The majority mistakenly concludes "the trial court erred in instructing the jury that [the aider and abettor] could

*See footnote, *ante*, page 1570.

not be found guilty of second degree murder as an aider and abettor if the jury determined that Woods, the perpetrator of the killing, was guilty of first degree murder." (Maj. opn., *ante*, p. 1577.) Because the majority fundamentally misapprehends the derivative nature of the "natural and probable consequence" doctrine of aider and abettor liability, I dissent.

By statute, those who aid and abet the commission of a crime are deemed "principals in any crime so committed." (Pen. Code, § 31.) Penal Code section 31 provides in relevant part: "All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, . . . are principals in any crime so committed."[1]

The first question under this statute is what mental state the aider and abettor must possess in order to be liable for the criminal acts of the perpetrator. "Considerable confusion exists as to what the accomplice's mental state must be in order to hold him accountable for an offense committed by another. In part, this may be attributable to some uncertainty as to whether the law should be concerned with the mental state relating to his own acts of assistance or encouragement, to his awareness of the principal's mental state, to the fault requirements for the substantive offense involved, or some combination of the above." (2 LaFave & Scott, Substantive Criminal Law (1986) Accomplice Liability, § 6.7, pp. 141-142.)

In California, any uncertainty was resolved in *People* v. *Beeman, supra*, 35 Cal.3d 547. "There is no question that an aider and abettor must have criminal intent in order to be convicted of a criminal offense." (*Id.* at 556.) And what is that intent? There must be "proof that an aider and abettor act[ed] with knowledge of the criminal purpose of the perpetrator *and* with an intent or purpose either of committing, or of encouraging or facilitating commission of, the offense. [¶] When the definition of the offense includes the intent to do some act or achieve some consequence beyond the *actus reus* of the crime, the aider and abettor must share the specific intent of the perpetrator. By 'share' we mean neither that the aider and abettor must be prepared to commit the offense by his or her own act should the perpetrator fail to do so, nor that the aider and abettor must seek to share the fruits of the

---

[1] As the California Supreme Court has noted, "those persons who at common law would have been termed accessories before the fact and principals in the second degree as well as those who actually perpetrate the offense, are to be prosecuted, tried and punished as principals in California. (See Pen. Code, § 971.) The term 'aider and abettor' is now often used to refer to principals other than the perpetrator, whether or not they are present at the commission of the offense." (*People* v. *Beeman* (1984) 35 Cal.3d 547, 554-555 [199 Cal.Rptr. 60, 674 P.2d 1318], fn. omitted.)

crime. Rather, an aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." (*Id.* at p. 560, italics in original & citations omitted.) In short, "a person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime." (*Id.* at p. 561.)

But what about aider and abettor liability for other crimes? Unlike the statutes in some states,[2] the California statute does not explicitly deal with liability for crimes other than the intended, target crime. Nevertheless, early on the California courts have engrafted the common law rule of derivative liability onto Penal Code section 31 and have imposed liability on aiders and abettors for other crimes which are the " 'probable and natural consequence' " of the aided and abetted crime. (*People* v. *Kauffman* (1907) 152 Cal. 331, 334 [92 P. 861].) " 'The general rule is well settled that where several parties conspire or combine together to commit any unlawful act, each is criminally responsible for the acts of his associates or confederates committed in furtherance of any prosecution of the common design for which they combine. In contemplation of law the act of one is the act of all. Each is responsible for everything done by his confederates, which follows incidentally in the execution of the common design as one of its probable and natural consequences, even though it was not intended as part of the

---

[2]As LaFave and Scott have noted, the statutes in some states explicitly deal with the problem of liability for other crimes. "Iowa Code Ann. § 703.2 (where persons commit offense in concert, 'each is responsible for the acts of the other done in furtherance of the commission of the offense . . . unless the act was one which the person could not reasonably expect to be done in the furtherance of the commission of the offense'); Kan.Stat.Ann. § 21-3205(2) (person criminally responsible for crimes of another 'is also liable for any other crime committed in pursuance of the intended crime if reasonably foreseeable by him as a probable consequence of committing or attempting to commit the crime intended'); Me.Rev.Stat.Ann. tit. 17-A, § 57 ('person is an accomplice . . . to any crime the commission of which was a reasonably foreseeable consequence of his conduct'); Minn.Stat.Ann. § 609.05 (same as Kan.); Wis.Stat.Ann. § 939.05 (person criminally responsible for crime of another on conspiracy or procuring basis 'is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime.')" (2 LaFave & Scott, Substantive Criminal Law, *supra*, Limits of Accomplice Liability, § 6.8, p. 157, fn. 24.) Other states, unlike California, require the aider and abettor to entertain the requisite intent for the charged crime. (See statutes collected in Carpenter, *Should the Court Aid and Abet the Unintending Accomplice: The Status of Complicity in California* (1984) 24 Santa Clara L.Rev. 343, 346, fn. 13.)

original design or common plan.' " (*Id.* at p. 334.)[3] This expanded scope of derivative liability poses comparable problems of intentionality and mental states.[4] "A somewhat similar question is whether, on an accomplice liability theory, one may be held accountable for a crime because it was a natural and probable consequence of the crime which that person intended to aid or encourage. This tests the outer limits of the mental state requirement for accomplice liability, for it asks, in effect, whether an intent with respect to one offense should suffice as to another offense which was the consequence of the one intended. [¶] The established rule, as it is usually stated by courts and commentators, is that accomplice liability extends to acts of the principal in the first degree which were a 'natural and probable consequence' of the criminal scheme the accomplice encouraged or aided." (2 LaFave & Scott, Substantive Criminal Law, *supra*, Limits of Accomplice Liability, § 6.8, p. 157.)

California follows this established rule although the doctrinal terminology of this derivative liability doctrine has often varied. Thus, it has been said that an aider and abettor is liable " 'for everything done by his confederates, which follows incidentally in the execution of the common design as one of its probable and natural consequences,' " (*People* v. *Kauffman, supra,* 152 Cal. at p. 334), for the "natural and reasonable consequences of the acts he knowingly and intentionally aids and encourages" (*People* v. *Beeman, supra,* 35 Cal.3d at p. 560), and for "any reasonably foreseeable offense committed by the person he aids and abets" (*People* v. *Croy* (1985) 41 Cal.3d 1, 12, fn. 5 [221 Cal.Rptr. 592, 710 P.2d 392]; accord, *People* v. *Cooper* (1991) 53 Cal.3d 1158, 1162, fn. 3 [282 Cal.Rptr. 450, 811 P.2d 742 ]). Nevertheless,

---

[3]In referring to the language of "combination or conspiracy" in the *Kauffman* case, the high court later emphasized "that the resort to language of conspiracy in cases such as that under consideration does not refer to the crime of that name but only to the fact of combination as it has relevance to the question of aiding and abetting in the commission of the charged crime." (*People* v. *Durham* (1969) 70 Cal.2d 171, 182, fn. 9 [74 Cal.Rptr. 262, 449 P.2d 198].) Thus, where the crime of conspiracy is not charged, the defendant " 'is convicted as a principal or accessory or not at all; and in this connection, the fact that principals may be conspirators is immaterial.' . . . 'The liability of a defendant for a criminal act is fixed by the provisions of section 31 of the Penal Code defining principals; and no instruction on the subject of conspiracy can add anything to that liability. . . . Liability attaches to anyone "concerned," however slight such concern may be, for the law establishes no degree of the concern required to fix liability as a principal.' " (*Id.* at pp. 184-185, fn. 11, some internal quotation marks omitted.)

[4]The imposition of derivative liability under the natural and probable consequences doctrine is not without its critics. (See, e.g., Fletcher, Rethinking Criminal Law (1978) pp. 581-682; 2 LaFave & Scott, Substantive Criminal Law, *supra*, Limits of Accomplice Liability, § 6.8, p. 158; Kadish, *Complicity, Cause and Blame: A Study in the Interpretation of Doctrine* (1985) 73 Cal.L.Rev. 324; *People* v. *Luparello* (1986) 187 Cal.App.3d 410, 452-454 [231 Cal.Rptr. 832] (conc. opn. of Wiener, J.).) The doctrine, however, is firmly entrenched in California law and as we noted in *People* v. *Rogers* (1985) 172 Cal.App.3d 502, 515, footnote 17 [217 Cal.Rptr. 809], we are not free to disregard it.

"[t]he variations in the adjectives the court has used to describe 'consequence' have never changed the basic structure and meaning of the test." (*People* v. *Brigham* (1989) 216 Cal.App.3d 1039, 1050 [265 Cal.Rptr. 486].)

So what intent must the accomplice harbor concerning a crime which is the natural and probable consequence of the target crime? Must he possess the requisite intent required for the ultimate, charged offense? The answer to that question is no and is found in *People* v. *Croy, supra*, 41 Cal.3d 1. "The requirement that the jury determine the intent with which a person tried as an aider and abettor has acted is not designed to ensure that his conduct constitutes the offense with which he is charged. His liability is vicarious. Like the conspirator whose liability is predicated on acts other than and short of those constituting the elements of the charged offense, if the acts are undertaken with the intent that the actual perpetrator's purpose be facilitated thereby, he is a principal and liable for the commission of the offense. Also like a conspirator, he is guilty not only of the offense he intended to facilitate or encourage, but also of any reasonably foreseeable offense committed by the person he aids and abets. One may aid or abet in the commission of a crime without having previously entered into a conspiracy to commit it. Moreover, the aider and abettor in a proper case is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable consequences of any act that he knowingly aided or encouraged. Whether the act committed was the natural and probable consequence of the act encouraged and the extent of defendant's knowledge are questions of fact for the jury. [¶] It follows that a defendant whose liability is predicated on his status as an aider and abettor need not have intended to encourage or facilitate the particular offense ultimately committed by the perpetrator. His knowledge that an act which is criminal was intended, and his action taken with the intent that the act be encouraged or facilitated, are sufficient to impose liability on him for any reasonably foreseeable offense committed as a consequence by the perpetrator. It is the intent to encourage and bring about conduct that is criminal, not the specific intent that is an element of the target offense, which *Beeman* holds must be found by the jury." (*Id.* at p. 12, fn. 5, internal quotation marks & citations omitted; italics deleted.)

From all of this it follows that an aider and abettor need not himself act with premeditation or even harbor express malice in order to be convicted of premeditated first degree murder. So long as the aider and abettor knowingly and intentionally aids the commission of a crime, he is liable for any other crime committed by the perpetrator that is the natural, probable and foreseeable consequence of the abetted crime, including first degree premeditated murder. "Applying these principles to the instant case, we conclude that once

the jury found defendant guilty as an aider and abettor of the first degree murder of Elaine Bunyard [his pregnant wife], the jury could have properly convicted him of the first degree murder of Baby Girl Bunyard even without the finding of express malice towards the fetus. The murder of Baby Girl Bunyard under the circumstances of this case—the planned killing of a pregnant woman—was a reasonably foreseeable and, indeed, inevitable offense of the first degree murder of Elaine Bunyard which defendant knowingly and intentionally encouraged and facilitated." (*People* v. *Bunyard* (1988) 45 Cal.3d 1189, 1231-1232 [249 Cal.Rptr. 71, 756 P.2d 795].)

But if the ultimate, charged crime is not a natural, probable, reasonable and foreseeable consequence of the abetted, target crime, then the aider is simply not guilty of the charged crime. An aider and abettor may be convicted of a crime which he did not specifically intend or contemplate, but "only to the extent of his knowledge or of the natural and reasonable consequences of the acts [knowingly and intentionally] aided and encouraged by him." (*People* v. *Beltran* (1949) 94 Cal.App.2d 197, 207 [210 P.2d 238].) Thus, "one is not liable who has counseled a particular criminal act, and the perpetrator has committed a different one not falling within the probable consequences of that advised." (*People* v. *King* (1938) 30 Cal.App.2d 185, 203 [85 P.2d 928].) Consequently, the pivotal question is "whether or not the act committed was the ordinary and probable effect of the common design or whether it was a fresh and independent product of the mind of one of the conspirators, outside of, or foreign to, the common design . . . ." (*People* v. *Durham, supra,* 70 Cal.2d at pp. 182-183.)

However phrased, the extension of the doctrine of derivative criminal liability for the natural and probable consequences of an assisted crime thus entails two components of proximate cause, cause in fact and foreseeability. The crime aided and abetted must be causally linked to the charged crime and the aider and abettor must either have foreseen, or should have foreseen, that the charged crime was a natural, probable and reasonable consequence of crime abetted. Thus, a charged offense is the natural and probable consequence of the target offense if under the circumstances it is both a likely outcome of, and is causally linked to, the target crime. These components are independent of intention of the aider and abettor. As this court noted in *People* v. *Rogers, supra,* 172 Cal.App.3d at page 515, "[t]his is a question of legal causation independent of any intention that the result obtain."

On the other hand, if the charged crime is not a likely outcome of the abetted crime or is not causally linked to the abetted crime, then the aider and abettor is not criminally liable for the charged crime. This is illustrated

in a case in which the high court rejected the contention that the trial court had a duty to instruct sua sponte on the principle of vicarious liability. "Defendant relies, first, on evidence that Myers [the asserted aider and abettor] assisted the AB [the Aryan Brotherhood, a prison gang] by smuggling drugs and knives into state prisons and by carrying messages. This evidence shows, at most, that Myers aided and abetted illegal drug activity and in-prison violence; the killing of an AB defector's relative, outside of prison, is not a natural and probable consequence of such crimes. Defendant also relies on evidence that Myers knew that defendant, a convicted felon, was in possession of a revolver and sawed-off shotgun while he stayed at her house. Assuming without deciding that Myers was guilty of aiding and abetting defendant's illegal weapons possession (see [Pen. Code,] §§ 12020-12021), there was no substantial evidence that Myers knew or should have known that defendant had agreed to commit a murder or was otherwise likely to use the illegally possessed weapons to commit a murder in the near future, and therefore the murder of Barnes was not a natural and probable consequence of permitting him to stay temporarily at her residence with the weapons. Because the evidence before the jury did not plainly support a finding that Myers was vicariously liable for Barnes's murder, the trial court did not err in failing to instruct on the principle of vicarious criminal liability." (*People* v. *Price* (1991) 1 Cal.4th 324, 443 [3 Cal.Rptr.2d 106, 821 P.2d 610].)[5]

The majority slices the foreseeability requirement too thin and needlessly superimposes another layer of complexity upon the jury and the court. Since an aider and abettor may be liable for a crime he did not intend (*People* v. *Croy*, *supra*, 41 Cal.3d at p. 12, fn. 5), it is not necessary that he foresee the precise manner or method of the execution of the charged crime. It has been said in the context of foreseeable causes that "[t]he precise consequence need not have been foreseen; it is enough that the defendant should have foreseen the possibility of some harm of the kind which might result from his act." (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Elements of Crime, § 132, p. 150.) This same rule applies in the context of aider and abettor liability. All that is required is that defendant knew or should have

---

[5]This precise point was made in the early case of *People* v. *Keefer* (1884) 65 Cal. 232 [3 P. 818]. There defendant was convicted of a murder committed by his accomplice, Chapman, while tying up the victim. The high court reversed the conviction, observing that even if defendant did encourage Chapman to bind the victim, "such encouragement would not, of itself, make him an accessory to the killing." (*Id.* at p. 233.) "In the case at bar, if defendant simply encouraged the *tying* of the deceased—a misdemeanor which did not and probably could not cause death or any serious injury—as the killing by Chapman was neither necessarily nor probably involved in the battery or false imprisonment, nor incidental to it, but was an independent and malicious act with which the defendant had no connection, the jury was not authorized to find defendant guilty of the murder, or of manslaughter." (*Id.* at pp. 233-234.)

known that the charged crime was likely to happen in some manner as a result of the commission of the targeted crime. "If the principal's criminal act charged to the aider and abettor is a reasonably foreseeable consequence of *any* criminal act of that principal, knowingly aided and abetted, the aider and abettor of such criminal act is derivatively liable for the act charged." (*People* v. *Brigham, supra,* 216 Cal.App.3d at p. 1054, italics in original.) As applied to homicide, it is enough that an unlawful killing was a likely consequence of the target crime. Stated another way, it is not necessary that the aider and abettor precisely foresee that the killing might be a premeditated one to prevent detection rather than an unpremeditated, panicked reaction to witnesses appearing on the scene. That is precisely the situation in this case. With defendant Windham acting as a lookout and after forcibly entering an apartment to retaliate for the gang shooting of one of their members, defendant Woods and the other armed confederates assaulted two women and then shot one of them. They then stole two automobile tires and fled the apartment when someone said the police were coming. As they were loading the tires into their car in preparation to flee, two men were observed in a car a few parking stalls away. Defendant Woods fired at the nearby car, killing one of its occupants. The majority adopts the argument of the aider and abettor (defendant Windham) that "the jurors could have found it was not reasonably foreseeable Woods would commit the premeditated killing of an innocent bystander, but it was reasonably foreseeable that Woods might commit the necessarily included offense of second degree murder, i.e., kill intentionally but without premeditation and deliberation or kill as a result of an intentional act dangerous to human life performed with knowledge of the danger and with conscious disregard for human life." (Maj. opn., *ante,* p. 1580.) This argument misses the point. What is crucial is that the aider and abettor either knew or should have known that a killing was a likely result of this abetted criminal rampage, not whether this foreseeable killing might constitute first degree murder as opposed to second degree murder or some variety of manslaughter. Aiders and abettors are not lawyers and their liability should not turn on the abstruse distinctions between the various types of criminal homicide. "A primary rationale for punishing aiders and abettors as principals—to deter them from aiding or encouraging the commission of offenses" (*People* v. *Cooper, supra,* 53 Cal.3d at p. 1168), would not be advanced by engrafting such rarefied distinctions on the derivative liability of accomplices. The majority concedes that homicide was a foreseeable consequence of this criminal enterprise and that ought to end the matter.

Since the aider and abettor's liability is derivative, he is either responsible for the ultimate crime because it is the foreseeable consequence of the abetted crime or he not liable because it is not. His fate then is inexorably tied to the perpetrator. In this case, the real question is not whether the aider

may be convicted of a crime lesser than the principal (the answer is no) but is rather whether this premeditated murder was both a foreseeable consequence of the abetted crime and was causally linked to that target crime. But the jury did not ask any questions about this and no appellate contention is raised about any failure to give further instructions on the doctrine of probable and natural consequences. Rather the court, upon inquiry, simply instructed the jury that if the perpetrator was found guilty of first degree murder, the aider and abettor could not be found guilty of second degree murder. In my view, this was correct and furnishes no grounds for reversal.

The hypothetical posed by the majority does not change this analysis. (Maj. opn., *ante*, p. 1588) If the stabbing of the store owner in the example was not a natural and probable consequence of the abetted petty theft (and that is a jury question if the facts are disputed), then the aider is guilty only of petty theft and if that offense is not charged, he is entitled to be acquitted. Far from an absurd result, this follows settled law.

In support of its novel position, the majority cites cases in which the aider and abettor has been convicted of a lesser degree than the principal. But these cases are best understood as problems of inconsistent verdicts. And they are best explained in *People* v. *Finch* (1963) 213 Cal.App.2d 752 [29 Cal.Rptr. 420]. "The evidence showed that defendant Finch did the actual shooting, and that Tregoff aided and abetted the commission of the act. Under section 31 of the Penal Code both were equally guilty; thus, in the eyes of the law whatever crime Finch committed defendant Tregoff committed. In that sense the verdicts of first degree murder as to Finch and second degree as to defendant Tregoff do conflict, but neither defendant complains on appeal of this conflict. Even if such complaint were lodged, however, a finding by the jury of defendant Tregoff guilty of the lesser offense, murder in the second degree, would not vitiate such verdicts nor be prejudicial to defendant Tregoff. It would have no adverse effect on defendant Finch. Since the evidence warranted the jury holding Tregoff guilty of murder in the first degree she cannot complain of a finding by the jury more favorable to her than the law and the evidence warranted." (*Id.* at p. 777.)

Because I agree with the remainder of the majority opinion, I would affirm all of the judgment, except for the Penal Code section 667.5, subdivision (b), enhancement as to defendant Woods.

A petition for a rehearing was denied September 22, 1992, and the petitions of both respondent and appellants for review by the Supreme Court were denied November 25, 1992. Kennard, J., was of the opinion that the petition should be granted.