Filed 11/16/20  P. v. Brown CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

|  |  |
|---|---|
| THE PEOPLE, | C089260 |
| Plaintiff and Respondent, | (Super. Ct. No. 93F1202) |
| v. | |
| CURTIS EDWARD BROWN, | |
| Defendant and Appellant. | |

Defendant Curtis Edward Brown appeals from the trial court's order denying his petition for resentencing pursuant to Penal Code section 1170.95 and Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437).[1]  Defendant argues the trial court erred by summarily denying his petition on the merits and failing to appoint counsel and receive briefing prior to determining his eligibility for resentencing.  We affirm the trial court's order.

---

[1] Undesignated statutory references are to the Penal Code.

1

# I. BACKGROUND

A jury found defendant and a co-defendant, Brian Franklin Thames, guilty of first-degree murder (§ 187, subd. (a)) and attempted murder (§§ 187, subd. (a), 664, subd. (a)) in May 1994. The jury found true allegations that Thames used a deadly weapon in the commission of the murder, acted willfully and with premeditation in the commission of the attempted murder, and inflicted great bodily injury in the attempted murder. The jury found not true allegations that defendant acted willfully and with premeditation in the commission of the attempted murder. Defendant was sentenced to 25 years to life for the murder, with an additional 16 years for the attempted murder and other enhancements. Defendant and Thames appealed their convictions and another panel of this court affirmed. (*People v. Thames, et al.* (Nov. 30, 1995, C018384) [nonpub. opn.].)

## A. *The Murder and Attempted Murder*

As set forth in our opinion, the evidence at trial showed that Thames and defendant set out to commit acts of violence against unsuspecting strangers on the night of January 1, 1993. (*People v. Thames, supra,* C018384, at pp. 2-8, 24-25, 27-28.) Thames set things in motion with an altercation in a bar, which caused him and defendant to be ejected. (*Id.* at p. 2.) Thames then precipitated an incident with two other men in a parking lot, challenging them to a fight and threatening to kill them. (*Id.* at pp. 2-3.) Thames and defendant eventually left the parking lot in a car driven by L.C. (*Id.* at p. 3.) Defendant was sitting in the front passenger seat of the car, and Thames was seated in the back. (*Id.* at p. 6.) They drove past a group of people. (*Ibid.*) One of the men—Thames or defendant—wanted to see where the group was going. (*Ibid.*) When they were unable to find the group again, Thames said, " 'They were lucky.' " (*Ibid.*)

R.G. was walking down Gold Street around the same time. (*People v. Thames, supra,* C018384, at p. 3.) Two men jumped out of a car and started beating him up. (*Ibid.*) The men were laughing and made no attempt to rob him. (*Ibid.*) R.G. suffered wounds to his cheek and neck caused by a sharp instrument. (*Ibid.*)

That same night, D.P. saw two men running down a side street towards a car matching the description of the one L.C. was driving. (*People v. Thames, supra,* C018384, at p. 5.) One of the men had a hairstyle similar to the one Thames favored. (*Id.* at pp. 2, 5.) Shortly thereafter, D.P. saw a man stumbling down the hill coming from the same direction as the two men. (*Id.* at p. 5.) The man made gurgling noises and collapsed on the street. (*Ibid.*) A short time later, Donald Dobbs was found lying in a pool of blood nearby. (*Ibid.*) Dobbs suffered two stab wounds, one to the cheek and one to the neck. (*Ibid.*) The wound to Dobbs's neck perforated his carotid artery, causing death. (*Ibid.*)

Police interviewed L.C. (*People v. Thames, supra,* C018384, at p. 5.) Taken together, L.C.'s testimony and the testimony of the police officer who interviewed her established that L.C. drove Thames and defendant down Gold Street, where they saw a man (R.G.) walking towards a liquor store. (*Id.* at p. 6.) One of the men instructed L.C. to stop the car. (*Ibid.*) When she did so, both jumped out and ran behind the car. (*Ibid.*) When they returned, they were "very excited." (*Ibid.*) Defendant said he knocked the man out with one punch. (*Ibid.*) Thames had two knives and blood on his arm. (*Id.* at p. 7.) Thames asked L.C. for something to wipe the blood off; Thames and defendant eventually found something in the car. (*Ibid.*)

A short time later, the group saw another man (Dobbs) walking down the street. (*People v. Thames, supra,* C018384, at p. 7.) Once again, Thames and defendant instructed L.C. to stop the car. (*Ibid.*) As before, they jumped out and ran behind the car. (*Ibid.*) When they returned, they were breathing hard. (*Ibid.*) Defendant exulted that Thames " 'got him again in one punch.' " (*Ibid.*) When L.C. asked what happened, Thames responded, " 'he's dead, [L.C].' " (*Ibid.*) L.C. listened as Thames described the sight and sound of blood pouring from Dobbs's jugular vein. (*Id.* at p. 8.) Thames and defendant laughed and asked L.C. if she wanted " 'to see one.' " (*Ibid.*)

3

Later, L.C. saw Thames washing two steak knives. (*People v. Thames, supra,* C018384, at p. 8.) L.C. surmised that the knives had been used to commit the murder and attempted murder. (*Ibid.*) Defendant disposed of the knives. (*Ibid.*) Later still, Thames told L.C.'s boyfriend that he " 'stuck somebody in the jugular vein' " with a steak knife. (*Ibid.*) Thames also admitted that he stabbed another man in the face. (*Ibid.*) Defendant told L.C.'s boyfriend that "there would be a 187 in the news." (*Ibid.*)

B.     *The Jury Instructions and Verdict*

The jury was instructed on principles of aiding and abetting intended crimes as well as the natural and probable consequences doctrine. Under that doctrine, " ' "[a] person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is the natural and probable consequence of the intended crime." ' " (*People v. Chiu* (2014) 59 Cal.4th 155, 161.) The prosecutor argued both theories of liability in closing argument.

As noted, the jury found Thames and defendant guilty of first degree murder and attempted murder. The jury found true allegations that Thames personally used a knife in each crime, personally inflicted great bodily injury in the attempted murder, and committed the attempted murder willfully and with premeditation. The jury found not true allegations that defendant committed the attempted murder willfully and with premeditation.

C.     *The Previous Appeal*

Thames and defendant challenged the convictions on several grounds. (*People v. Thames, supra,* C018384, at pp. 9-28.) Two such grounds, asserted by defendant only, are relevant here.

First, defendant challenged the sufficiency of the evidence to support the conviction for attempted murder as an aider and abettor. (*People v. Thames, supra,* C018384, at p. 23.) This court rejected defendant's challenge, stating: "The jury could

4

infer that defendants, angry at their exclusion from [the bar] and frustrated in their attempt to seek revenge there, went hunting for any individuals unlucky enough to cross their path. From the speed, violence, and viciousness of the attack on [R.G.], the jury could conclude [defendant] intended at the very least, to aid Thames in administering a severe beating upon an unsuspecting, vulnerable victim. Attempted murder is a reasonably foreseeable consequence of such an attack." (*Id.* at p. 25.)

"However," the court continued, "the evidence supports the further inference that [defendant] was aware of, and shared, Thames's deadlier intent. Not only were the defendants apparently willing to take on superior numbers, but [defendant] took the time to prepare for combat by putting on the latex gloves before the attack on [R.G]. The jury could infer defendants were willing to attack a group because they were armed. They could further infer the defendants prepared for the attack in such a manner as to minimize the evidentiary trail. Even if [defendant's] part was limited to hitting the victim with his fists, his actions were calculated to quickly debilitate the victim increasing the likelihood that Thames's knife attack would result in death. Ample evidence supports the jury's verdict." (*People v. Thames, supra,* C018384, at pp. 25-26.)

Second, relying on *People v. Woods* (1992) 8 Cal.App.4th 1570 (*Woods*), defendant argued the trial court had a sua sponte duty to instruct the jury that, as an aider and abettor to Dobbs's murder, he could be found guilty of a lesser degree of the offense than Thames because it was not reasonably foreseeable that Thames would commit a deliberate and premeditated murder. (*People v. Thames, supra,* C018384, at p. 27.) In *Woods,* another panel of this court held that, "an aider and abettor may be found guilty of a lesser crime than that ultimately committed by the perpetrator where the evidence suggests the ultimate crime was not a reasonably foreseeable consequence of the criminal act originally aided and abetted, but a lesser crime committed by the perpetrator during the accomplishment of the ultimate crime was such a consequence." (*Woods, supra,* at p. 1577.) The court found the rule in *Woods* inapplicable on the facts. (*People v. Thames,*

5

*supra,* C018384, at p. 27.) The court explained: "From the sequence of events leading to the stabbing of Dobbs, the jury could only conclude that both Thames and [defendant] shared a deliberate premeditated intent to kill their hapless victim." (*Ibid.*)

The court continued: "Even were we, charitably, to grant that at the time of the attack on [R.G.], [defendant] intended to aid and abet only a violent assault, at the conclusion of that attack, [defendant] unquestionably knew that Thames had, and used, the knives. The subsequent statements and conduct of the defendants make it clear they shared a purpose to attack and, if possible, kill any person they happened upon. Dobbs was that person. Once defendants selected him as a target, [defendant] fully cooperated in letting Thames out of the back seat of the car without demur, hunting Dobbs down through the darkened streets, and facilitating Thames's deadly attack. Both men were aware of what they had done and even offered to do another killing so [L.C.] could witness it. Because the evidence did not suggest a lesser crime than first degree murder, the trial court was not required to give the instruction suggested by *Woods.*" (*People v. Thames, supra,* C018384, at pp. 27-28.) Accordingly, this court rejected defendant's claim of instructional error and affirmed the conviction. (*Id.* at p. 28.)

D.     *The Petition*

Defendant, representing himself, filed a form petition for resentencing under section 1170.95 on January 14, 2019. In the petition, defendant declared that he met the requirements under section 1170.95 for relief under Senate Bill No. 1437, including that (1) the information allowed the prosecution to proceed under a theory of felony murder or the natural and probable consequences doctrine; (2) he was convicted of murder based on a theory of felony murder or the natural and probable consequences doctrine; and (3) he could not be convicted of first degree murder under changes to section 189 effective January 1, 2019, because he was not the actual killer, and did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree. Defendant further declared that he was not a

6

major participant in the felony, and did not act with reckless indifference to human life during the course of the felony. Defendant further declared that the victim was not a peace officer. Defendant requested that the court appoint him counsel.

The trial court denied the petition. Relying on our opinion in the previous appeal, the trial court found that, "The facts of the defendant's involvement in the killing are such that his application does not come close to making a prima facie showing. The defendant was present at the time the victim was killed, he assisted in the killing, he enjoyed the process of the killing and he shared Mr. Thames'[s] intention to kill the victim. The facts suggest that both the defendant and Mr. Thames were on the prowl to commit a murder." The trial court found support for this conclusion in our discussion of defendant's challenge to the sufficiency of the evidence, which we have partially excerpted above. Accordingly, the trial court concluded, "defendant has failed to establish a prima facie showing that his petition warrants consideration for the relief requested."

This appeal timely followed.

## II. DISCUSSION

Defendant contends the trial court erred by summarily denying the petition without appointing counsel and allowing the parties to brief the issues. He further contends he made a prima facie showing of eligibility for resentencing.

A.      *Senate Bill No. 1437*

We begin with an overview of Senate Bill No. 1437, which was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Verdugo* (2020) 44 Cal.App.5th 320, 325, review granted Mar. 18, 2020, S260493 (*Verdugo*); *People v. Martinez* (2019) 31 Cal.App.5th 719, 723.) "Senate Bill No. 1437 achieves these goals by amending section 188 to require that a

7

principal act with express or implied malice and by amending section 189 to state that a person can only be liable for felony murder if (1) the 'person was the actual killer'; (2) the person was an aider or abettor in the commission of murder in the first degree; or (3) the 'person was a major participant in the underlying felony and acted with reckless indifference to human life.' (§ 189, subd. (e), as amended by Stats. 2018, ch. 1015, §§ 2, 3.)" (*People v. Cornelius* (2020) 44 Cal.App.5th 54, 57, review granted March 18, 2020, S260410 (*Cornelius*); see *Verdugo, supra,* at p. 326.)

Senate Bill No. 1437 also added section 1170.95, which permits persons convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder following Senate Bill No. 1437's changes to sections 188 and 189. (Stats. 2018, ch. 1015, § 4.) Section 1170.95, subdivision (b) requires that the petitioner file a declaration showing his or her eligibility for relief under subdivision (a), the superior court case number and year of the petitioner's conviction, and whether he or she requests the appointment of counsel.

Section 1170.95, subdivision (c) describes the next steps in the process as follows: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

Section 1170.95, subdivisions (b) and (c) create a three-step process for evaluating a petitioner's eligibility for relief. (*Verdugo, supra,* 44 Cal.App.5th at pp. 327-330, rev. granted; accord *People v. Torres* (2020) 46 Cal.App.5th 1168, 1177, review granted June

8

24, 2020, S262011.) First, the trial court determines whether the petition is facially sufficient under section 1170.95, subdivision (b)(2). (*Verdugo, supra,* at pp. 327-328.) To do this, the trial court verifies that the petition contains the information required under section 1170.95, subdivision (b)(1), and supplies any missing information that can be "readily ascertained" from reliable, accessible information, including the record of conviction. (*Verdugo, supra,* at pp. 328-330.)

If the petition is facially sufficient, then, in the second step, the trial court determines under section 1170.95, subdivision (c) whether the petitioner has made "a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).) The Court of Appeal for the Second District, Division 7, has described this inquiry as "a preliminary review of statutory eligibility for resentencing, a concept that is a well-established part of the resentencing process under Propositions 36 and 47." (*Verdugo, supra,* 44 Cal.App.5th at p. 329, rev. granted.) "The court's role at this stage is simply to decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner." (*Ibid.*) In making this inquiry, the trial court may again examine readily available portions of the record of conviction, including "at least," the "complaint, information or indictment filed against the petitioner; the verdict form or factual basis documentation for a negotiated plea; and the abstract of judgment." (*Id.* at pp. 329-330.) The trial court may also consider jury instructions and any appellate opinion in the case. (*Id.* at p. 333.)

If the trial court determines that the petitioner is not ineligible for relief as a matter of law, the evaluation of the petition proceeds to the third step, a "second prima facie review," in which "the court must direct the prosecutor to file a response to the petition, permit the petitioner (through appointed counsel if requested) to file a reply and then determine, with the benefit of the parties' briefing and analysis, whether the petitioner has made a prima facie showing he or she is entitled to relief." (*Verdugo, supra,* 44 Cal.App.5th at pp. 328, 330, rev. granted.) In this second prima facie review, the trial

9

court must take the petitioner's factual allegations as true and make a preliminary assessment whether he or she would be entitled to relief if they were proved. (*Id.* at p. 328; see also *People v. Drayton* (2020) 47 Cal.App.5th 965, 976 [in the second prima facie review, "the trial [court] considers whether the petitioner has made a prima facie showing of *entitlement to* (rather than eligibility for) relief"].)

"If, accepting the facts asserted in the petition as true, the petitioner would be entitled to relief because he or she has met the requirements of section 1170.95[, subdivision ](a), then the trial court should issue an order to show cause. [Citation.] Once the trial court issues the order to show cause under section 1170.95[, subdivision ](c), it must then conduct a hearing pursuant to the procedures and burden of proof set out in section 1170.95, subd[ivision] (d) unless the parties waive the hearing or the petitioner's entitlement to relief is established as a matter of law by the record. [Citation.] Notably, following the issuance of an order to show cause, the burden of proof will shift to the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*People v. Drayton, supra,* 47 Cal.App.5th at pp. 980-981.) Both the prosecution and the defense may rely on the record of conviction or may offer new or additional evidence. (§ 1170.95, subd. (d)(3).)

B.    *Appointment of Counsel and Briefing*

Defendant challenges the trial court's summary denial of the petition prior to the appointment of counsel and briefing. Whether a trial court may summarily deny a section 1170.95 petition prior to the appointment of counsel and briefing has been addressed by several courts and is currently before our Supreme Court. (*Verdugo, supra,* 44 Cal.App.5th at p. 323, rev. granted; see also *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137-1140, review granted Mar. 18, 2020, S260598 (*Lewis*); *Cornelius, supra,* 44 Cal.App.5th at p. 58, rev. granted.) We find the *Verdugo* court's analysis of the issue particularly persuasive. With regard to the timing of the appointment of counsel and briefing, the *Verdugo* court has explained: "The structure and grammar of [section

10

1170.95, subdivision (c)] indicate the Legislature intended to create a chronological sequence:  first, a prima facie showing; thereafter, appointment of counsel for petitioner; then, briefing by the parties." (*Verdugo, supra,* at p. 332.)  The court reasoned that it would not "make sense as a practical matter to appoint counsel earlier in the process since counsel's first task is to reply to the prosecutor's response to the petition.  If, as here, the court concludes the petitioner has failed to make the initial prima facie showing required by subdivision (c), counsel need not be appointed.  Of course, if the petitioner appeals the superior court's summary denial of a resentencing petition, appointed counsel on appeal can argue the court erred in concluding his or her client was ineligible for relief as a matter of law." (*Id.* at pp. 332-333.)  Pending further guidance from our Supreme Court, we agree with *Verdugo*.  Accordingly, we reject defendant's contention that he had a statutory right to appointed counsel and briefing in the first prima facie review.

We likewise reject defendant's contention that he had a constitutional right to appointed counsel under the Sixth Amendment.  As the Court of Appeal for the First District, Division 2, has explained, in deciding that section 1170.95 petitioners are not entitled to jury trials, the relief afforded by section 1170.95 is "not subject to Sixth Amendment analysis.  Rather, the Legislature's changes constituted an act of lenity that does not implicate defendants' Sixth Amendment rights." (*People v. Anthony* (2019) 32 Cal.App.5th 1102, 1156; accord *People v. Lopez* (2019) 38 Cal.App.5th 1087, 1114-1115, review granted Nov. 13, 2019, S258175.)  Although the *Anthony* court was not specifically concerned with the right to counsel, the court's analysis is closely analogous, and convinces us that section 1170.95 petitioners, who do not enjoy a Sixth Amendment right to a jury trial, cannot be said to have a right to counsel under the Sixth Amendment either.  Based on the foregoing, we conclude that defendant's petition did not implicate his Sixth Amendment right to counsel, a conclusion that comports with the rule that a defendant's "right to appointed counsel extends to the first appeal of right, and no

11

further." (*Pennsylvania v. Finley* (1987) 481 U.S. 551, 555.) We therefore reject defendant's Sixth Amendment argument.

Finally, defendant argues that due process or equal protection require appointed counsel in the first prima facie review. Defendant's argument on this point amounts to little more than a conclusory assertion, followed by string cites. Although some of defendant's cases hold that incarcerated and indigent persons may be constitutionally entitled to counsel when petitioning for other forms of statutory relief, none support defendant's contention that appointed counsel is constitutionally required at this early stage of the petitioning process, before any evaluation of defendant's prima facie eligibility for relief. (See *People v. Rouse* (2016) 245 Cal.App.4th 292, 299-301 [holding that a Proposition 47 petitioner has a Sixth Amendment right to counsel during resentencing following the trial court's determination of eligibility, but declining to decide whether such a petitioner has a right to counsel during the initial eligibility hearing]; *People v. Fryhaat* (2019) 35 Cal.App.5th 969, 981-982 [holding that a section 1473.7 petitioner must make a prima facie showing of entitlement to relief before the court issues an order to show cause and appoints counsel].) We therefore conclude that defendant has failed to show that he was entitled to appointed counsel as a matter of due process or equal protection.

C.      *The Trial Court Properly Denied the Petition*

Defendant next argues the trial court erred in finding he failed to make a prima facie showing of eligibility for resentencing. He argues the trial court exceeded its limited role under section 1170.95, subdivision (c), and takes issue with the court's reliance on our prior opinion. We share defendant's view that the trial court's reasoning and reliance on our prior opinion were problematic. Even so, we conclude the trial court reached the right result. (*People v. Zapien* (1993) 4 Cal.4th 929, 976 [we review the trial court's result, not its reasoning].)

As defendant correctly observes, the trial court focused on our discussion of the attempted murder of R.G., and not the murder of Dobbs, which was the offense underlying the petition. Just as important, our discussion of the defendant's conviction for attempted murder involved an entirely different—indeed, opposite—standard of review. Whereas our substantial evidence review of the sufficiency of the evidence required us to indulge every inference in favor of the judgment (*People v. Torres* (2019) 39 Cal.App.5th 849, 856-857), the trial court's first prima facie review under section 1170.95, subdivision (c) required the court "simply to decide whether the petitioner is ineligible for relief as a matter of law, making all factual inferences in favor of the petitioner." (*Verdugo, supra,* 44 Cal.App.5th at p. 329, rev. granted.) That substantial evidence supports an inference that defendant directly aided and abetted the attempted murder of R.G. ("was aware of, and shared, Thames's deadlier intent" (*People v. Thames, supra*, C018384, at p. 25)) does not establish as a matter of law that defendant directly aided and abetted the premeditated murder of Dobbs. Without belaboring the point, our discussion of the sufficiency of the evidence supporting defendant's conviction for attempted murder does not support the conclusion, as a matter of law, that defendant's conviction for murder could not have been based on the natural and probable consequences doctrine. The trial court's focus on that portion of our prior opinion was therefore misplaced. But, as the People suggest, the trial court was nevertheless correct in concluding that defendant was ineligible for relief as a matter of law.

Defendant argued in the prior appeal that the trial court had a sua sponte duty to instruct the jury that, as an aider and abettor to Dobbs's murder, he could be found guilty of a lesser degree of the offense than Thames because it was not reasonably foreseeable that Thames would commit a deliberate and premeditated murder. (*People v. Thames, supra,* C018384, at p. 27.) Defendant's argument was based on *Woods, supra,* in which two defendants—Woods and Windham—assaulted two people and stole some property. (*Woods, supra,* 8 Cal.App.4th at p. 1577.) During their getaway, Woods shot and killed a

person sitting in a nearby car.  (*Ibid.*)  Both defendants were charged and tried on a theory of first degree murder.  (*Ibid.*)

During deliberations, the jury asked whether Windham could be found guilty of second degree murder, even if Woods, the shooter, was found guilty of first degree murder.  (*Woods, supra,* 8 Cal.App.4th at p. 1579.)  The trial court answered this question in the negative.  (*Ibid.*)  A divided panel of this court reversed, holding that an aider and abettor may be found guilty under the natural and probable consequences doctrine of a lesser crime than that committed by the perpetrator, when "the evidence suggests the ultimate crime was not a reasonably foreseeable consequence of the criminal act originally aided and abetted, but a lesser crime committed by the perpetrator during the accomplishment of the ultimate crime was such a consequence."  (*Id.* at p. 1577; see *id.* at pp. 1586-1587.)  The majority explained, however, that, "the trial court need not instruct on a particular necessarily included offense if the evidence is such that the aider and abettor, if guilty at all, is guilty of something beyond that lesser offense, i.e., if the evidence establishes that a greater offense was a reasonably foreseeable consequence of the criminal act originally contemplated, and no evidence suggests otherwise."  (*Id.* at p. 1593.)

Our prior opinion distinguished *Woods* on the facts, stating:  "From the sequence of events leading to the stabbing of Dobbs, the jury could only conclude that both Thames and [defendant] shared a deliberate premeditated intent to kill their hapless victim."  (*People v. Thames, supra,* C018384, at p. 27.)  Our prior opinion went on to examine the evidence that defendant aided and abetted the premeditated murder of Dobbs, stating that the evidence was "clear" that defendant and Thames "shared a purpose to attack and, if possible, kill any person they happened upon."  (*Id.* at p. 28.)

Our prior opinion determined that no instructions on lesser offenses to first degree murder were necessary, because here, in contrast to *Woods,* the evidence was such that defendant, "if guilty at all," was "guilty of something beyond that lesser offense."

14

(*Woods, supra,* 8 Cal.App.4th at p. 1593; see *People v. Thames, supra,* C018384, at p. 28.)  Implicit in our determination that no supplemental instructions were necessary under *Woods* was a determination, on a fully developed record, that the jury relied on a theory of direct aiding and abetting to find defendant guilty of first degree murder. (*People v. Thames, supra,* C018384, at p. 27 ["the jury could only conclude that both Thames and [defendant] shared a deliberate premeditated intent to kill their hapless victim"].)  That determination, in turn, compels the conclusion that the jury's verdict was based on the permissible direct aiding and abetting theory, rather than the impermissible natural and probable consequences theory.

Our prior opinion thus establishes that defendant was convicted as a direct aider and abettor in the premeditated murder of Dobbs.  It follows that defendant's status as a direct aider and abettor has already been adjudicated against him, such that the record of conviction (specifically, our discussion of defendant's claim of instructional error) establishes defendant's ineligibility for relief under section 1170.95 as a matter of law. The trial court properly denied defendant's petition in the first prima facie review, albeit not for the reasons articulated in the order.  (See *Lewis, supra,* 43 Cal.App.5th at pp. 1138-1139, rev. granted [trial court properly denied section 1170.95 petition in first prima facie review where record established beyond a reasonable doubt that defendant acted as a direct aider and abettor, and defendant was precluded from relitigating question by doctrine of collateral estoppel]; see also 1 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Defenses, § 208, pp. 683-684 [collateral estoppel applies in criminal cases].)

15

## III.  DISPOSITION

The order denying defendant's petition for resentencing is affirmed.

/S/

_____
RENNER, J.

We concur:

/S/

_____
MAURO, Acting P. J.

/S/

_____
DUARTE, J.