Filed 1/13/22  P. v. Brown CA3
Opinion following transfer from Supreme Court

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C089260 |
| Plaintiff and Respondent, | (Super. Ct. No. 93F1202) |
| v. | OPINION ON TRANSFER |
| CURTIS EDWARD BROWN, | |
| Defendant and Appellant. | |

Defendant Curtis Edward Brown appeals from the trial court's order summarily denying his petition for resentencing pursuant to Penal Code section 1170.95 and Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437).[1]  We affirmed the order in our unpublished opinion filed November 16, 2020, and approved the procedure adopted by the trial court in summarily denying the petition.  (*People v. Brown* (Nov. 16, 2020,

---

[1]  Undesignated statutory references are to the Penal Code.

1

C089260) [nonpub. opn.].)  The California Supreme Court granted review and transferred the matter back to us with directions to vacate our opinion and reconsider the cause in light of *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*).  Upon reconsideration, we agree with defendant that the trial court erred by summarily denying his petition on the merits and failing to appoint counsel and receive briefing prior to determining his eligibility for resentencing.  We cannot say the errors were harmless.  Accordingly, we will reverse and remand with instructions to the trial court to appoint counsel for defendant and issue an order to show cause for further proceedings under section 1170.95.

## I.  BACKGROUND

A jury found defendant and a co-defendant, Brian Franklin Thames, guilty of first-degree murder (§ 187, subd. (a)) and attempted murder (§§ 187, subd. (a), 664, subd. (a)) in May 1994.  The jury found true allegations that Thames used a deadly weapon in the commission of the murder, acted willfully and with premeditation in the commission of the attempted murder, and inflicted great bodily injury in the attempted murder.  The jury found not true allegations that defendant acted willfully and with premeditation in the commission of the attempted murder.  Defendant was sentenced to 25 years to life for the murder, with an additional 16 years for the attempted murder and other enhancements.  Defendant and Thames appealed their convictions and another panel of this court affirmed.  (*People v. Thames et al.* (Nov. 30, 1995, C018384) [nonpub. opn.].)

A.      *The Murder and Attempted Murder*

We take certain facts from the unpublished opinion we issued in 1995 affirming defendant's convictions in *People v. Thames, supra,* C018384:

The evidence at trial showed that Thames and defendant set out to commit acts of violence against unsuspecting strangers on the night of January 1, 1993.  Thames set things in motion with an altercation in a bar, which caused him and defendant to be ejected.  Thames then precipitated an incident with two other men in a parking lot, challenging them to a fight and threatening to kill them.  Thames and defendant

eventually left the parking lot in a car driven by L.C. Defendant was sitting in the front passenger seat of the car, and Thames was seated in the back. They drove past a group of people. One of the men—Thames or defendant—wanted to see where the group was going. When they were unable to find the group again, Thames said, " 'They were lucky.' "

R.G. was walking down Gold Street around the same time. Two men jumped out of a car and started beating him up. The men were laughing and made no attempt to rob him. R.G. suffered wounds to his cheek and neck caused by a sharp instrument.

That same night, D.P. saw two men running down a side street towards a car matching the description of the one L.C. was driving. One of the men had a hairstyle similar to the one Thames favored. Shortly thereafter, D.P. saw a man stumbling down the hill coming from the same direction as the two men. The man made gurgling noises and collapsed on the street. A short time later, Donald Dobbs was found lying in a pool of blood nearby. Dobbs suffered two stab wounds, one to the cheek and one to the neck. The wound to Dobbs's neck perforated his carotid artery, causing death.

Police interviewed L.C. Taken together, L.C.'s testimony and the testimony of the police officer who interviewed her established that L.C. drove Thames and defendant down Gold Street, where they saw a man (R.G.) walking towards a liquor store. One of the men instructed L.C. to stop the car. When she did so, both jumped out and ran behind the car. When they returned, they were "very excited." Defendant said he knocked the man out with one punch. Thames had two knives and blood on his arm. Thames asked L.C. for something to wipe the blood off; Thames and defendant eventually found something in the car.

A short time later, the group saw another man (Dobbs) walking down the street. Once again, Thames and defendant instructed L.C. to stop the car. As before, they jumped out and ran behind the car. When they returned, they were breathing hard. Defendant exulted that Thames " 'got him again in one punch.' " When L.C. asked what

3

happened, Thames responded, " 'he's dead, [L.C].' " L.C. listened as Thames described the sight and sound of blood pouring from Dobbs's jugular vein. Thames and defendant laughed and asked L.C. if she wanted " 'to see one.' "

Later, L.C. saw Thames washing two steak knives. L.C. surmised that the knives had been used to commit the murder and attempted murder. Defendant disposed of the knives. Later still, Thames told L.C.'s boyfriend that he " 'stuck somebody in the jugular vein' " with a steak knife. Thames also admitted that he stabbed another man in the face. Defendant told L.C.'s boyfriend that "there would be a 187 in the news."

## B. The Jury Instructions and Verdict

The jury was instructed on principles of aiding and abetting intended crimes as well as the natural and probable consequences doctrine. Under that doctrine, " ' "[a] person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is the natural and probable consequence of the intended crime." ' " (*People v. Chiu* (2014) 59 Cal.4th 155, 161.) The prosecutor argued both theories of liability in closing argument.

As noted, the jury found Thames and defendant guilty of first degree murder and attempted murder. The jury found true allegations that Thames personally used a knife in each crime, personally inflicted great bodily injury in the attempted murder, and committed the attempted murder willfully and with premeditation. The jury found not true allegations that defendant committed the attempted murder willfully and with premeditation.

## C. The Original Appeal

Thames and defendant challenged the convictions on several grounds. (*People v. Thames, supra,* C018384.) Two such grounds, asserted by defendant only, are relevant here.

4

First, defendant challenged the sufficiency of the evidence to support the conviction for attempted murder as an aider and abettor. (*People v. Thames, supra,* C018384.) This court rejected defendant's challenge, stating: "The jury could infer that defendants, angry at their exclusion from [the bar] and frustrated in their attempt to seek revenge there, went hunting for any individuals unlucky enough to cross their path. From the speed, violence, and viciousness of the attack on [R.G.], the jury could conclude [defendant] intended at the very least, to aid Thames in administering a severe beating upon an unsuspecting, vulnerable victim. Attempted murder is a reasonably foreseeable consequence of such an attack." (*Ibid.*)

"However," the court continued, "the evidence supports the further inference that [defendant] was aware of, and shared, Thames's deadlier intent. Not only were the defendants apparently willing to take on superior numbers, but [defendant] took the time to prepare for combat by putting on the latex gloves before the attack on [R.G]. The jury could infer defendants were willing to attack a group because they were armed. They could further infer the defendants prepared for the attack in such a manner as to minimize the evidentiary trail. Even if [defendant's] part was limited to hitting the victim with his fists, his actions were calculated to quickly debilitate the victim increasing the likelihood that Thames's knife attack would result in death. Ample evidence supports the jury's verdict." (*People v. Thames, supra,* C018384.)

Second, relying on *People v. Woods* (1992) 8 Cal.App.4th 1570 (*Woods*), defendant argued the trial court had a sua sponte duty to instruct the jury that, as an aider and abettor to Dobbs's murder, he could be found guilty of a lesser degree of the offense than Thames because it was not reasonably foreseeable that Thames would commit a deliberate and premeditated murder. (*People v. Thames, supra,* C018384.) In *Woods,* another panel of this court held that, "an aider and abettor may be found guilty of a lesser crime than that ultimately committed by the perpetrator where the evidence suggests the ultimate crime was not a reasonably foreseeable consequence of the criminal act

5

originally aided and abetted, but a lesser crime committed by the perpetrator during the accomplishment of the ultimate crime was such a consequence." (*Woods, supra,* at p. 1577.) The court found the rule in *Woods* inapplicable on the facts. (*People v. Thames, supra,* C018384.) The court explained: "From the sequence of events leading to the stabbing of Dobbs, the jury could only conclude that both Thames and [defendant] shared a deliberate premeditated intent to kill their hapless victim." (*Ibid.*)

The court continued: "Even were we, charitably, to grant that at the time of the attack on [R.G.], [defendant] intended to aid and abet only a violent assault, at the conclusion of that attack, [defendant] unquestionably knew that Thames had, and used, the knives. The subsequent statements and conduct of the defendants make it clear they shared a purpose to attack and, if possible, kill any person they happened upon. Dobbs was that person. Once defendants selected him as a target, [defendant] fully cooperated in letting Thames out of the back seat of the car without demur, hunting Dobbs down through the darkened streets, and facilitating Thames's deadly attack. Both men were aware of what they had done and even offered to do another killing so [L.C.] could witness it. Because the evidence did not suggest a lesser crime than first degree murder, the trial court was not required to give the instruction suggested by *Woods.*" (*People v. Thames, supra,* C018384.) Accordingly, this court rejected defendant's claim of instructional error and affirmed the conviction.

D.     *The Petition*

Defendant, representing himself, filed a form petition for resentencing under former section 1170.95 on January 14, 2019. In the petition, defendant declared that he met the requirements under section 1170.95 for relief under Senate Bill 1437, including that: (1) the information allowed the prosecution to proceed under a theory of felony murder or the natural and probable consequences doctrine; (2) he was convicted of murder based on a theory of felony murder or the natural and probable consequences doctrine; and (3) he could not be convicted of first degree murder under changes to

6

section 189 effective January 1, 2019, because he was not the actual killer, and did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree.  Defendant further declared that he was not a major participant in the felony, and did not act with reckless indifference to human life during the course of the felony.  Defendant further declared that the victim was not a peace officer.  Defendant requested that the court appoint him counsel.

The trial court denied the petition.  Relying on our opinion in the previous appeal, the trial court found that, "The facts of the defendant's involvement in the killing are such that his application does not come close to making a prima facie showing.  The defendant was present at the time the victim was killed, he assisted in the killing, he enjoyed the process of the killing and he shared Mr. Thames'[s] intention to kill the victim.  The facts suggest that both the defendant and Mr. Thames were on the prowl to commit a murder."  The trial court found support for this conclusion in our discussion of defendant's challenge to the sufficiency of the evidence, which we have partially excerpted above.  Accordingly, the trial court concluded, "defendant has failed to establish a prima facie showing that his petition warrants consideration for the relief requested."

Defendant timely appealed.

## II.  DISCUSSION

"Effective January 1, 2019, the Legislature passed Senate Bill 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)  In addition to substantively amending sections 188 and 189 of the Penal Code, Senate Bill 1437 added section 1170.95, which provides a procedure for convicted

7

murderers who could not be convicted under the law as amended to retroactively seek relief." (*Lewis, supra,* 11 Cal.5th at p. 959.)

A person convicted of felony murder or murder under a natural and probable consequences theory could file a petition for resentencing under former section 1170.95 if: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (Former § 1170.95, subd. (a)(1)-(3).) The petition must include a declaration stating the petitioner is eligible for relief "based on all the requirements of subdivision (a)" and whether the petitioner requests the appointment of counsel. (Former § 1170.95, subd. (b)(1).)

Pursuant to former section 1170.95, subdivision (c), "[t]he court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court *shall* appoint counsel to represent the petitioner." (Former § 1170.95, subd. (c), emphasis added.) The parties would then proceed with additional briefing and, "[i]f the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause" (former § 1170.95, subd. (c)) and "hold a hearing to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts (*id.*, subd. (d)(1)).

Before *Lewis,* many courts, including this one, interpreted former section 1170.95, subdivision (c) "to require two distinct, sequential inquiries," with the trial court being required to appoint counsel only once it determined the petitioner was not ineligible for relief as a matter of law. (*Lewis, supra,* 11 Cal.5th at p. 961; see *People v. Verdugo*

(2020) 44 Cal.App.5th 320, 327, review granted Mar. 18, 2020, S260493; and see *People v. Brown, supra,* C089260.)  *Lewis* rejected this interpretation.  (*Lewis, supra,* at p. 967.)  Our Supreme Court has now clarified that former "subdivision (c) does not establish an internal, threshold barrier to the appointment of counsel and the opportunity for briefing." (*Ibid.*)  Instead, "petitioners who file a complying petition requesting counsel are to receive counsel *upon the filing* of a compliant petition."  (*Id.* at p. 963, emphasis added.)[2]

It is undisputed that defendant here filed a facially sufficient petition.  Given *Lewis,* the People concede the trial court erred by failing to appoint counsel for defendant or entertain briefing, but argue the errors were harmless.  We accept the People's concession and agree that the trial court erred by denying defendant's petition at the prima facie stage without appointing counsel and permitting additional briefing.  We disagree, however, with the People's contention that the errors were harmless.

Error in denying a facially sufficient petition without appointing counsel or receiving additional briefing is tested under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836.  (*Lewis, supra,* 11 Cal.5th at pp. 957-958.)  Under that standard, defendant "must . . . 'demonstrate there is a reasonable probability that in the absence of the error he . . . would have obtained a more favorable result.'  [Citations.]  More specifically, a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing.' " "  (*Id.* at p. 974.)

---

[2] The Legislature recently enacted an amendment to section 1170.95, which took effect on January 1, 2022.  (Sen. Bill No. 775 (2021-2022 Reg. Sess.) § 2.)  Senate Bill No. 775 reinforces our view that remand is required but does not materially change our analysis. Because the trial court applied the former law, and because we are charged with reconsidering our prior opinion in light of *Lewis,* which also applied the former law, we shall do the same.

Defendant argues there was a reasonable probability he would have obtained a more favorable result had counsel been appointed and given an opportunity to direct the trial court's attention to parts of the record that supported the petition, including jury instructions on the natural and probable consequences doctrine, and the prosecutor's closing argument, which invited jurors to reach a guilty verdict with that theory. The People counter that the errors were harmless because defendant was ineligible for relief as a matter of law, a position we endorsed in our most recent opinion. Upon reconsideration, however, we now agree with defendant.

*Lewis* establishes that "the prima facie inquiry under [former section 1170.95,] subdivision (c) is limited." (*Lewis, supra,* 11 Cal.5th at p. 971.) "Like the analogous prima facie inquiry in habeas corpus proceedings, ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." ' " (*Ibid.*) Although the trial court may appropriately consider the record of conviction, including any appellate opinions, "the probative value of an appellate opinion is case specific, and 'it is certainly correct that an appellate opinion might not supply all answers.' " (*Id.* at p. 972.) Furthermore, "[i]n reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Ibid.*) This is so, the high court explained, because "the 'prima facie bar was intentionally and correctly set very low.' " (*Ibid.*)

Following *Lewis*, we now perceive a reasonable probability that appointed counsel could have credibly argued that our original opinion should not be given preclusive effect at this preliminary juncture. Although we continue to believe that our discussion of defendant's claim of instructional error warrants consideration by the trial court, we now acknowledge that our original opinion " 'might not supply all answers.' " (*Lewis, supra,* 11 Cal.5th at p. 972.) We must also acknowledge that our original opinion may not

10

establish, as a matter of law, that defendant cannot meet his prima facie burden to show that he could not be convicted of murder under the amendments to sections 188 and 189. It is one thing to say that no instructions on lesser offenses to first degree murder were necessary because the evidence showed that defendant "if guilty at all," was "guilty of something beyond that lesser offense." (*Woods, supra,* 8 Cal.App.4th at p. 1593.) But it is another thing to say that jurors necessarily found defendant guilty as a direct aider and abettor, despite the prosecutor's invitation to apply the natural and probable consequences doctrine. Because the jury returned a general verdict, we perceive a reasonable probability that appointed counsel could have credibly argued that some jurors may have found defendant guilty under the now invalid natural and probable consequences doctrine, or may have seen little reason to choose between alternative theories of guilt, such that an evidentiary hearing was required.

Defendant argues that appointed counsel would have provided necessary context for the conclusions set forth in our original opinion and offered to introduce evidence that the prosecution's main witness, L.C., suffered from credibility problems that made the jury's reliance on the natural and probable consequences doctrine more likely. Following *Lewis,* we conclude that defendant has demonstrated a reasonable probability that the " ' "petition would not have been summarily denied without an evidentiary hearing" ' " had counsel been appointed and briefing entertained. (*Lewis, supra,* 11 Cal.5th at p. 974; see *People v. Watson, supra,* 46 Cal.2d at p. 836.) Accordingly, we will reverse and remand with instructions for the trial court to appoint counsel and permit additional briefing in accordance with section 1170.95, subdivision (c). We express no opinion on defendant's ultimate entitlement to relief.

## III.  DISPOSITION

The trial court's order is reversed.  The trial court is ordered to appoint counsel for defendant, issue an order to show cause, and conduct further proceedings under section 1170.95.


/S/

_____

RENNER, J.


We concur:


/S/

_____

MAURO, Acting P. J.


/S/

_____

DUARTE, J.